JOSEPH K. PLEPEL, Plaintiff-Appellee and Cross-Appellant, *v.* ALEX NIED, a/k/a Alex Niedzialek, Defendant and Counterdefendant-Appellant and Cross-Appellee.—(LYONS SAVINGS & LOAN ASSOCIATION, Defendant and Counterplaintiff-Appellant and Cross-Appellee.)

First District (2nd Division)    No. 81-909

Opinion filed April 20, 1982.—Rehearing denied June 1, 1982.

Theodore W. Wrobleski, of Chicago, for appellant Alex Nied.

E. Paul Lanphier, of Elmhurst, for appellant Lyons Savings & Loan Association.

John B. Murnighan, of Kovar & Smetana, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

In an amended two-count complaint against several defendants, including Alex Nied (Nied) and Lyons Savings & Loan Association (Lyons), plaintiff Joseph K. Plepel (Plepel) sought foreclosure of a mechanic's lien on Nied's property, contract damages and certain other relief. Both counts alleged, *inter alia,* that plaintiff orally contracted with Nied to perform architectural services between June 23 and September 20, 1976, in connection with property located at 40th & Harlem Avenues in Stickney, Illinois, which was then beneficially owned in part by Nied, who subsequently caused the sale of the property to Lyons.

Count I of the amended complaint sought to foreclose on Plepel's original and amended claim for an architect's lien in the amount of $19,249.50, the claims having been attached and incorporated as Exhibits A and B. Count II prayed for judgment on a breach of oral contract

theory, claiming damages in the same amount. Subsequent to the commencement of Plepel's actions, Lyons filed a counterclaim against Nied seeking to be indemnified for all expenses, attorney fees and liabilities that it potentially could incur as a result of Plepel's complaint against it and an amended counterclaim consisting of count II seeking to have Nied deposit $25,000 as security, among other things. After a protracted bench trial, on January 13, 1981, the trial court awarded Plepel $13,416.44 plus statutory interest and costs on counts I and II of the complaint. Subsequently, the court allowed Lyons $3,693 for attorney fees and costs on its counterclaim. Default judgments, which had been theretofore entered on February 14, 1980, against two trusts apparently holding legal title to the property, were reduced from $19,249.50 plus interest and costs, to $13,416.44. The February 14, 1980, order contained appropriate language as to finality and appealability (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)); however, no appeal had been taken from its provisions.·

Nied appeals the judgment for Plepel and the allowance of fees on the counterclaim; Lyons appeals the judgment for Plepel; and, Plepel cross-appeals, seeking an increase in the amount of the judgment on count II entered in his favor. The principal issues raised on appeal include whether: (1) Plepel sustained his burden of proof, either on the mechanic's lien or breach of contract count; (2) Plepel could recover on either an express or implied contract, or *quantum meruit* theory; (3) certain documents were properly admitted into evidence; (4) the award of damages and interest was excessive and against the manifest weight of the evidence; and, (5) an agreement executed by Nied's attorney provided for the allowance of attorney fees as sought in Lyons' counterclaim against Nied. In Plepel's cross-appeal, the issues raised are whether: (1) the award of damages was inadequate and against the manifest weight of the evidence; and (2) the trial court had jurisdiction to reduce the amounts of the final judgments previously entered.

For the reasons which follow, we affirm the judgment as to Lyons' counterclaim; reverse and remand for a new trial as to counts I and II of the amended complaint; and reverse that part of the judgment which amends earlier judgments entered against the trustees possessing legal title to the real estate.

Evidence relevant and material to the issues raised on appeal will be discussed in the body of the opinion.

## I

Although out of chronological development, consideration of Plepel's cross-appeal at the outset will help clarify the issues presented for our consideration, since it deals with the threshold issue of whether or not an "express" contract existed. Plepel urges that there was sufficient evidence

to support both the mechanic's lien judgment on count I and the judgment for damages on his breach of oral contract in count II based upon an express oral contract. As to count I, Plepel concedes that he cannot claim a lien in excess of that set forth in his recorded claim for lien as against Lyons, a subsequent purchaser by virtue of section 7 of the Illinois Mechanic's Lien Act (Ill. Rev. Stat. 1979, ch. 82, par. 7). He maintains, however, that he was entitled to damages under count II in excess of the amount awarded: his damages should have been computed in accordance with the purported express contract which existed between Plepel and Nied calling for architectural fees of 6% of the final construction costs of $560,000 or $33,600, less the $1,100 amount previously paid to him. He maintains that the trial court's finding that a final design never crystallized and that final construction costs were never determined is against the manifest weight of the evidence.

A. The Contract

The evidence in the record, including Plepel's testimony, Nied's admissions and other testimony, clearly establishes that a contractual relationship existed between Plepel and Nied whereby the former was to render architectural services to the latter. The trial court so found. Less patent are the issues of whether there was a breach of its terms and, if so, whether Plepel sufficiently proved the damages he seeks.

B. The Breach

Plepel claims that the terms of the contract called for payment to him of 6% of the "total cost of construction" in return for his drafting of architectural plans for Nied's proposed improvement. He testified that such plans were in fact drawn, represented by plaintiff's Exhibits 10 and 12 in evidence. His drawings were not completed to the point where they could be submitted for mechanical drawings because of changes being requested. The trial court sustained objections to plaintiff's offer to prove the "cost" of mechanical and electrical drawings yet to be completed.

Mrs. Barbara Miller, then secretary of Lyons and, at the time of trial, its president, testified as an adverse witness under section 60 (Ill. Rev. Stat. 1979, ch. 110, par. 60), that Nied applied to Lyons for a loan and that the loan application was accompanied by plaintiff's Exhibit 10. She ordered an appraisal of the property and, after changes in Exhibit 10 recommended by the appraiser were made, Lyons' loan committee approved the loan "conditionally." The loan was never granted, she asserted, because the conditions were never fulfilled. Arthur Gouvis, an architect, testified that Plepel's plans constituting plaintiff's Exhibit 12 were suitable for bid documents although they lacked mechanical and electrical specifications and detail. Nevertheless, he stated, "intelligent" contractors could give bid quotations based upon the degree of completion of the plans.

No countervailing evidence was adduced by Nied or Lyons as to what services had been agreed upon by Plepel and Nied, aside from the bare assertions by Nied, on section 60 examination by Plepel, that he told Miller he had an architect who would work "cheap" and that Plepel agreed to and accepted a fee of $1,100 for his services. Nied testified that he terminated Plepel's services by telling him in July 1976 that "* * * this woman changed her mind and that I am not going through with the building. * * * Forget the whole problem."

■■ From the foregoing evidence it is clear that Plepel was engaged to draw such plans as would form the basis upon which a loan application could be made, construction bids solicited and mechanical and electrical drawings and detail completed. Having been prevented from completing those plans by Nied's unilateral action and direction to Plepel to "forget the whole problem," Plepel has manifestly demonstrated Nied's breach of the oral agreement for which he was entitled to damages.

C. The Damages

■■ The law has recognized that the services of an architect, being highly creative in nature, entitles him to a percentage of his fee when he submits preliminary plans and specifications regardless of ultimate property development. (*Furst v. Board of Education* (1959), 20 Ill. App. 2d 205, 223, 155 N.E.2d 654.) Were this not the case, an owner who engaged the architect could simply refuse to proceed with the plans drawn and the architect would be paid nothing for valuable services rendered, where, as here, a project is abandoned before construction begins. (*Orput-Orput & Associates, Inc. v. McCarthy* (1973), 12 Ill. App. 3d 88, 94-95, 298 N.E.2d 225.) In order to recover his fee in circumstances where the construction is never begun, the architect is obligated to prove the amount of "construction costs" as shown by admissible evidence, as well as the percentage of completion of his drawings submitted to the owner, which would establish a reasonable basis for the computation of contract damages. *Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 677-78, 356 N.E.2d 565; *Michalowski v. Richter Spring Corp.* (1969), 112 Ill. App. 2d 451, 457-58, 251 N.E.2d 299.

Evidence of construction costs presented by Plepel in the instant case arose first from his own testimony, based upon information received from Richard Frolick, a civil engineer Plepel claimed to have been in his employ, that "zoning out this plot" was "around" $560,000 "to the best of his recollection." Although that figure and $565,000 were repeated several times, obscure and conclusory references to "zoning out this plot" does not supply the necessary construction cost base from which the damages could be computed. The trial court, during the hearings, mentioned, "we have nothing but ballpark estimates of $560,000 to $565,000," to which Plepel's counsel assented. Plepel complains that his efforts to have Nied or

Lyons produce a copy or the original of the contractor's sworn statement of costs of construction were unavailing and, in the absence of contradictory evidence, Plepel's testimony must be accepted. Miller testified that she was "pretty sure" Nied had submitted a contractor's statement of construction costs, but she found no such document in her files and could not recall any figures it may have contained. Nied denied that he ever submitted an application for a loan to Lyons. It is further apparent that Frolick, who allegedly secured the bids from which the cost of construction was taken, was available and could have supplied the necessary evidentiary formulation which the trial court found lacking in Plepel's case. Curiously, Plepel never called Frolick to testify, although he was alleged to have been in Plepel's employ.

The trial court found, in its judgment order, that the cost of construction of the proposed building could not be the basis of Plepel's claim for architectural services because, "[t]he Contractors Statements, which allegedly were to represent a breakdown of trades and cost for construction of a building, may have had some initial basis on bids received by Frolic [sic], but the several Statements introduced as evidence appeared to be based on inflated guesstimates. The amount identified for 'architectural services' on these Statements changed from $6,000 to $11,000, to $14,000." Plaintiff testified that these amounts were not representative of his actual fees. Our own examination of the record, including plaintiff's Exhibits 14, 15 and 16, purporting to the contractors' statements of construction costs, together with Plepel's testimony that some of the figures were inflated, show that the trial court's findings were fully supported by the record. Not only did the component costs of architectural services vary from document to document, but other putative costs varied as well, such as plumbing, wiring and glazing, among others. Two written bids, apparently secured by Frolick, received in evidence as plaintiff's Exhibits 18 and 19, were never listed on the contractors' statements of costs, Exhibits 14, 15 and 16.

Evidence of the percentage of architectural work actually completed by Plepel was never determined, a necessary factor in computing fees under the circumstances of this case. (*Michalowski v. Richter Spring Corp.*) Plepel's offer to prove the cost of preparing mechanical and electrical plans and detail did not supply the necessary percentage of completion evidence, particularly in the absence of a viable cost of construction figure with which a necessary comparison would have had to have been made. Plepel's effort to distinguish *Michalowski* on the ground that he had fully performed on his contract, whereas Michalowski did not, is contrary to his own testimony that some work yet remained to be performed on the contract.

From the foregoing, it cannot be concluded that the trial court's

findings against Plepel's express contract damages for breach and proposed computation were against the manifest weight of the evidence under count II. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.) Accordingly, the damage award for breach of contract cannot be increased as Plepel demands.

## II

Nied, and Lyons, which adopted certain of Nied's arguments, maintain that the damages awarded by the trial court cannot be supported by record evidence under an implied contract or *quantum meruit* theory, citing, *e.g.*, *Excellent Builders, Inc. v. Pioneer Trust & Savings Bank* (1973), 15 Ill. App. 3d 832, 305 N.E.2d 273, and *Goodman v. Motor Products Corp.* (1959), 22 Ill. App. 2d 378, 161 N.E.2d 31. Relying upon *Crowen v. Meyer* (1930), 342 Ill. 46, 174 N.E. 55, and *Michalowski v. Richter Spring Corp.*, they argue that the amounts awarded Plepel under the count II breach of contract action fail for want of sufficient evidence because Plepel never properly proved the necessary bases for a *quantum meruit* recovery. They therefore question the evidentiary basis of the decision. Plepel contends that the evidence submitted relating to his expenses was not intended to show his actual expenses; rather, it was presented only as evidence of consideration for the contract. Neither Plepel's amended complaint nor his argument on appeal appear to articulate an implied contractual or *quantum meruit* theory for recovery, although some of the evidence submitted by him at trial, *e.g.*, testimony as to the reasonable value of the services he rendered, tended to point in that direction. The trial court appears to have based its decision upon *quantum meruit*. Since Plepel on appeal seeks alternative relief, either recognition of his express contract damages claim or affirmance of the trial court's judgment, except as to the default judgment amendments to be addressed subsequently, we shall consider Nied's argument on its merits.

■■ As noted above, the express oral contractual damages were not satisfactorily proven. When damages for defendant's breach of an express contract are not established, plaintiff may seek recovery on a *quantum meruit* basis where it can be shown that, in fact, valuable services were rendered. (See *Slater v. Jacobs* (1977), 56 Ill. App. 3d 636, 638, 371 N.E.2d 1054.) The record shows that Plepel has rendered valuable services but was prevented from fully performing so as to earn the agreed compensation. (5 Corbin on Contracts sec. 1109 (1964).) In an otherwise rather confused record, it is evident Nied obtained the benefit of these architectural services, which provided him with the means and opportunity to seriously explore his idea of improving the property. See *Comm v. Goodman* (1972), 6 Ill. App. 3d 847, 286 N.E.2d 758.

■ Nied and Lyons contend that the trial court erred in admitting the "back-up" or supporting pages of plaintiff's Group Exhibit No. 13 into evidence, the invoice for architectural services and related costs, over his objection. It is apparent that the trial court considered this exhibit in establishing the mechanic's lien in count I and in granting Plepel's damages under count II. The challenged documents consisted of a summary sheet listing the component expenses shown on the invoice and several sheets indicating the hours of certain draftsmen who worked on the project. On the basis of these documents, the trial court considered $6,262.44 as proven expense for drafting work performed on the project. These hearsay documents were neither offered nor received as business record exceptions under Supreme Court Rule 236, whereby Plepel could show that they were kept in the regular course of his profession and that it was in the regular course of his professional business to keep such records. (Ill. Rev. Stat. 1977, ch. 110A, par. 236; *A. J. Davinroy Plumbing & Heating v. Ernest, Inc.* (1980), 87 Ill. App. 3d 1047, 1054, 409 N.E.2d 372; *Erickson v. Ottawa Travel Center, Inc.* (1979), 69 Ill. App. 3d 108, 111, 387 N.E.2d 49.) The "back-up" sheets stand as hearsay statements offered for the truth of the matters asserted and were improperly admitted into evidence and considered by the trial court in its computations. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) Indeed, Plepel's testimony at trial suggests only that the time sheets were filled in on an ad hoc and irregular basis.

■ Nied also properly questions the recognition of $5,900 for the work performed by Frolick. The basis of that obligation was never fully explained. Plepel admitted that he neither received a bill from Frolick, nor fully paid him. This award is also questioned because it was based partly upon three checks identified by Nied for use on cross-examination but never admitted into evidence. Even had the checks been so offered and received, two bear notations indicating their application to matters other than the Stickney property. The trial court lacked authority to base an award of damages upon documents not admitted into evidence.

Since a substantial portion of the evidence upon which the trial court relied was erroneously considered, as noted above, the judgment on both counts I and II must be reversed and remanded for a new trial.

### III

Because of the need for a new trial, we consider, next, issues which may again arise and should be resolved beforehand.

Nied and Lyons insist that the $1,840 allowed by the trial court for "Met structural," $700 for Mel Hansen mechanical services, and $214 for blueprints utilized in the court's decision were so unreliable as to be useless. The record, however, reveals that in each of these instances there

was sufficient independent testimony to corroborate those amounts without reference to the summary sheets. Further, the trial court's application of multipliers in order to arrive at some of these sums was not an abuse of discretion in view of expert testimony that the use of such multipliers in billing clients was customary in the architectural profession.

■■ Nied and Lyons assert that the allowance for interest and costs was erroneous. Section 1 of the Mechanic's Lien Act (Ill. Rev. Stat. 1977, ch. 82, par. 1) specifically provides that a contractor shall have a lien for the amount due from the service, material and labor furnished "and interest from the date the same is due." The allowance was proper with respect to the foreclosure of the mechanic's lien claim asserted in count I. (*Aupperle & Sons, Inc. v. American National Bank & Trust Co.* (1975), 28 Ill. App. 3d 573, 578, 329 N.E.2d 458; *Ahmer v. Peters* (1958), 17 Ill. App. 2d 113, 149 N.E.2d 503.) Since the mechanic's lien judgment under count I was based, in part, upon evidence improperly admitted, however, the lien interest must be recomputed following retrial of this case. With respect to count II, the allowance of interest was improper. The amount owing under that count depended primarily upon the interpretation of an oral contract and questions of fact about which there could be differing opinions. *General Dynamics Corp. v. Zion State Bank* (1981), 86 Ill. 2d 135, 140-41, 427 N.E.2d 131.

## IV

We turn next to the issues raised with respect to the allowance of attorney's fees and costs pursuant to Lyons' counterclaim. At the time of the real estate closing, Nied's attorney, R. L. Dichtl, executed the following handwritten agreement:

"I agree to serve a 30 day demand for suit upon Jos. K. Plepel re his alleged mechanic's lien recorded in Cook Co., Ill. as doc. #23674627 and to defend such action to conclusion.

R. L. Dichtl."

Shortly after Plepel's action was commenced against Nied and Lyons, Dichtl in a letter asserted that he could not adequately represent both Nied and Lyons, and advised the latter to retain counsel to protect its own interests. Subsequently, Lyons filed a counterclaim seeking, *inter alia*, attorney fees and costs. On appeal, Nied argues, in effect, that the clause "to defend" should be construed to mean "to defend Nied only"; whereas Lyons urges, in effect, that the clause should be interpreted to mean "to defend Lyons."

■■■ Absent a statute or contractual agreement, attorney fees and the ordinary expenses of litigation are not allowable to the successful party. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) An indemnity agreement must be construed as any other contract and the dominant rule

of construction is to determine the intention of the parties. (*Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 251, 423 N.E.2d 1170; *National Bank v. West Construction Co.* (1976), 41 Ill. App. 3d 686, 355 N.E.2d 43.) The agreement is ambiguous as to who Dichtl agreed to defend; therefore, parol evidence was admissible to explain the ambiguity. (*Felbinger & Co. v. Traiforos* (1979), 76 Ill. App. 3d 725, 732, 394 N.E.2d 1283.) When the written agreement to Dichtl is examined in the context of the real estate closing, it becomes evident that the trial court did not abuse its discretion in allowing fees. According to the president of Lyons, the real estate sales contract was predicated upon several conditions to satisfy or clear the lien of record, including the agreement of Nied's attorney to defend Plepel's lawsuit so that Lyons "didn't have to get involved * * *." Contemporaneously with the formation of this agreement, Nied executed a note wherein he promised to pay Lyons as much as $19,249.50 to satisfy Plepel's lien and assigned to Lyons his beneficial interest in other property as additional security. On the basis of this evidence, the trial court could have properly found that at the time Dichtl's agreement was executed it was intended that Lyons' specific interest would be defended in the event of a lawsuit. The cases cited by Nied, *Singleton v. County of Cook* (1977), 53 Ill. App. 3d 994, 369 N.E.2d 227, and *Schwieger v. Dean Van Lines, Inc.* (1971), 132 Ill. App. 2d 154, 269 N.E.2d 520, are inapposite, since they involve contractual language which is substantively different than that used in the agreement here. We conclude that the allowance for fees and costs was wholly proper.

## V

■■ Plepel argues that the trial court lacked jurisdiction to reduce the amounts of two prior default judgments. On February 14, 1980, the trial court entered default judgments against the Bank of Lyons and Western National Bank of Cicero in their capacities as trustees (legal titleholders to the real estate), in the amounts of $19,249.50, for failing to appear, file their answers or otherwise defend. Appropriate finality and appealability findings were set forth in the order. (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a).) Oral motions to vacate those judgments were made during proceedings on February 21, 1980. The trial court directed that they be made in writing and they were filed on March 24, 1980, alleging that neither trust existed prior to the initiation of the instant lawsuit. Supporting documents disclosed that both trusts were closed on February 4, 1977. Those motions were denied on May 12, 1980. No appeal was ever taken from those orders. The judgment of January 13, 1981, purports to amend the February 14, 1980, order by reducing the default judgments to $13,416.44, thus conforming them to the present judgments.

Nied suggests that Plepel's notice of cross-appeal does not request

relief from the trial court's action in this regard; however, our examination of the notice language reveals that it is broad enough to encompass this issue. It is evident that the trial court was without jurisdiction to reduce the amount of the prior judgments entered approximately 11 months earlier. Accordingly, the instant order so modifying the February 14, 1980, order must also be reversed.

Affirmed in part and reversed in part and remanded.

STAMOS, P. J., and DOWNING, J., concur.