**IBF CORPORATION, Appellant,**

v.

**Erwin ALPERN, Appellee.**

No. 83–1494.

District of Columbia Court of Appeals.
Argued Oct. 3, 1984.
Decided Jan. 18, 1985.

James K. Foley, Washington, D.C., for appellant.

Lawrence S. Lapidus, Washington, D.C., for appellee.

Before NEBEKER, NEWMAN and FERREN, Associate Judges.

FERREN, Associate Judge:

Appellant IBF Corporation (IBF), a family corporation, appeals the granting of a motion to satisfy a judgment against one of its officers, Bernard L. Frishman, by garnishment of the corporation pursuant to D.C.Code § 16–579 (1981). IBF claims the motions judge erred in finding that Frishman, the judgment debtor, "render[ed] services" to the corporation. *Id.* IBF also challenges the judge's application of the statute in awarding corporate payments of $1,500 per month until the judgment against Frishman is satisfied. Because the finding that Frishman rendered services to the corporation, as well as the basis for arriving at a payment schedule, was not plainly wrong or without evidentiary support in the record, D.C.Code § 17–305(a) (1981), we affirm the motions judge's order.

## I.

In 1973, appellee Erwin Alpern, an attorney, sued Frishman to recover approximately $14,000 in unpaid legal fees which Frishman had owed since April 1970. The court entered a default judgment for the full amount on March 3, 1973. To date the judgment has remained unsatisfied.

After entry of judgment, appellee moved to compel discovery as to the personal finances of Frishman's wife, in an attempt to learn whether Frishman had fraudulently conveyed assets to her in order to avoid attachment. This court sustained the denial of appellee's motion, in the interest of protecting Mrs. Frishman from harassment and unnecessary intrusion into her personal business. *Alpern v. Frishman*, 465 A.2d 828 (D.C.1983). We now consider the appeal of a court order levying this 14-year-old debt against IBF, the Frishman family corporation.

IBF is owned by Mrs. Frishman and the Frishmans' two adult children. Appellant takes the position, as stated by counsel at the motions hearing, that IBF is "basically an investment type of business and Mrs. Frishman has testified she is an investment counsellor.... [T]here's been no proof of any work" for IBF by Frishman.

■ The record shows, however, that Mr. Frishman was President of IBF at no salary for an extended period of time relevant to this lawsuit.[1] Although we cannot presume, absent a contractual agreement, that a corporate officer receives a salary, *see, e.g., Rector v. Director of Department of Employment Security*, 120 R.I. 802, 807, 390 A.2d 370, 373 (1978), the record supports the trial court's finding that Frishman rendered services to IBF and received corresponding benefits.

More specifically, appellee's credit investigator supplied an affidavit that Frishman conducts an architectural business under IBF's name.[2] Frishman himself stated in his May 1, 1981, deposition that he goes into the IBF office "[m]ost of the time—half of the time," receives mail there, and has a phone tended by an answering service in his absence.[3] IBF paid the rent for the office; Frishman acknowledged that he paid no rent to IBF and that he deducted the rental payments as business expenses on his own federal income tax returns (filed jointly with his wife) for 1977, 1978, 1979, and 1980.[4]

## II.

D.C.Code § 16–579 (1981) authorizes garnishment of a corporation to pay the unsatisfied debt of a person "who is proved to be

1. In her deposition of November 10, 1981, Mrs. Frishman denied that her husband was an officer of IBF or any other corporation. This denial, however, is clearly rebutted by other evidence. Frishman himself signed on October 20, 1980, a three-year lease for the premises of IBF in his capacity as President of the corporation. Appellee's credit investigator averred in his affidavit of March 23, 1983, that Frishman claimed to be President of, IBF. And Mrs. Frishman herself, as recently as February 22, 1983, stated in answer to interrogatories that Frishman was "President of Corporation, at no salary." Frishman "resigned" as President of IBF as of September 30, 1983, in a letter signed October 7, 1983, and filed with the court on November 23, 1983. This resignation was, to say the least, expedient, given the trial court's order against IBF on October 5, 1983.

2. The credit investigator averred under oath that Frishman conducted business under five different names, including "IBF Corporation" and "IBF Corporation Developers." He also said that Frishman gave him an embossed business card identifying Frishman as President of IBF. Appellee's counsel confirmed this at oral argument. However, the Xerox copy of the business card in the record does not show the designation "IBF."

3. In a deposition of May 24, 1984, Frishman said that he went to the office at least once a week and sometimes several times a week. Although this testimony postdated the October 5, 1983, hearing, it bears witness to the continuing validity of Judge Wolf's order.

4. IBF is a subchapter S corporation whose shareholders pay individual income tax on corporate earnings regardless of whether those earnings are distributed. I.R.C. §§ 1371–79 (1982). Most of the Frishmans' joint returns reflect income from architectural services, interest, and dividends.

rendering services to or employed by" that corporation at no compensation "or at a salary or compensation so inadequate as to satisfy the court that the salary or compensation is merely colorable and is designed to defraud or impede the creditors of the debtor...."[5] If such service or employment is proved, the court may direct the corporation "to make payments on account of the judgment, in installments, based upon a reasonable value of the services rendered by the judgment debtor under his employment or upon the debtor's then earning ability." *See supra* note 5.

The text of § 16–579 dates back to 1959,[6] when Congress added it to the rudimentary provision for garnishment of debts that formed part of the original act to establish a code of law for the District of Columbia.[7] The sparse legislative history reveals only that the new garnishment provisions, including the section that is now § 16–579, were intended to remedy the existing law under which a judgment creditor could attach a debtor's entire wages, not just a reasonable percentage, pending judicial determination of the appropriate amount.

There was no elaboration as to § 16–579 itself.

■ In general, a judgment creditor who seeks to attach property of an entity other than the debtor has the burden of proving that the entity is liable to the debtor. *See, e.g., Peterson v. Government Employees Insurance Co.*, 434 A.2d 1389 (D.C.1981) (plaintiff seeking to garnishee insurer had burden of proving insurer liable for payment of judgment against defendant); *Donaldson v. Home Indemnity Co.*, 165 A.2d 492 (D.C.1960) (same); *Walsh v. Lewis Swimming Pool Construction Co.*, 256 Md. 608, 261 A.2d 475 (1970) (judgment creditor may garnishee only funds or property for which debtor would have right to sue).

■ In the present case, the motions judge, by permitting Alpern to garnishee IBF in order to recover Frishman's debt, found IBF liable to Frishman for services rendered. Put another way, by virtue of § 16–579, the judge allowed Alpern to pierce the corporate veil in reverse.[8] Thus,

---

5. D.C.Code § 16–579 (1981) provides:

Where the judgment debtor claims or is proved to be rendering services to or employed by a relative or other person or by a corporation owned or controlled by a relative or other person, without salary or compensation, or at a salary or compensation so inadequate as to satisfy the court that the salary or compensation is merely colorable and designed to defraud or impede the creditors of the debtor, the court may direct the employer-garnishee to make payments on account of the judgment, in installments, based upon a reasonable value of the services rendered by the judgment debtor under his employment or upon the debtor's then earning ability.

6. D.C.Code § 16–579 codified Pub.L. No. 88–241, § 1, 77 Stat. 557 (1963). The 1963 Act revised and rearranged the existing provisions on garnishment, and it made only minor changes in phraseology in what is now § 16–579. S.REP. NO. 743, 88th Cong., 1st Sess. 126 (1963). The section was originally enacted on August 4, 1959 by Pub.L. No. 86–130, § 1, 73 Stat. 277 (1959). *Id.*

7. An Act to Establish a Code of Law for the District of Columbia, Ch. 854, §§ 445–77, 1086–

98, 1104, 31 Stat. 1258–64, 1359–62 (1901) (current version at D.C.Code §§ 16–501 to –584 (1981 & Supp.1984)).

8. A creditor usually attempts to set aside the corporate entity to assess corporate liability directly against a controlling insider, *see, e.g., Labadie Coal Co. v. Black*, 217 U.S.App.D.C. 239, 672 F.2d 92 (1982) (vacated dismissal of action to pierce corporate veil to reach assets of husband of dominant stockholder). In such cases, the courts must find that there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and that an "inequitable result" will follow "if the acts are treated as those of the corporation alone." 217 U.S.App.D.C. at 243, 672 F.2d at 96 (footnote omitted).

In contrast, Alpern has looked beyond Frishman to reach the corporate fisc—a reverse veil-piercing under § 16–579 with analogous results under federal tax law. *See Valley Finance, Inc. v. United States*, 203 U.S.App.D.C. 128, 629 F.2d 162 (1980) (sustained federal tax lien on corporation wholly owned by taxpayer), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *Loving Saviour Church v. United States*, 728 F.2d 1085 (8th Cir.1984) (per curiam) (unincorporated religious association was property of

the question here is two-fold: (1) whether the motions judge properly found that Frishman had "rendered services" to IBF for which he received inadequate, if any, compensation; and, if so, (2) whether the judge, in ordering IBF to pay monthly installments of $1,500 until the judgment against Frishman is satisfied, properly based the levy "upon a reasonable value of the services rendered" by Frishman to IBF or upon Frishman's "then earning ability." *See supra* note 5.

### III.

■ D.C.Code § 16–579 (1981)—while not limited to garnishment of family or other closed corporations—reflects the kinds of concerns that permit a court to pierce the corporate veil in order to reach the personal assets of a controlling person. *See supra* note 8. The statute is designed to permit a levy against the corporate fisc when a debtor who renders services to the corporation takes inadequate, if any, compensation—and thus presumably leaves his or her money in the corporation—in order to defraud or otherwise impede personal creditors.

■ Here, the record sustains the motions judge's finding that Frishman rendered services to IBF in that Frishman was IBF President; held himself out as an IBF employee by virtue of his business card; regularly used IBF office space for which he paid no rent but deducted the rental payments as a business expense on his personal income tax returns; received his mail at IBF's office; and relied on the IBF

answering service. The motions judge, therefore, properly invoked § 16–579.

### IV.

■ We turn to the trial court's calculation of IBF's monthly payments to Alpern. At the motions hearing, Judge Wolf used the most recent available figures [9] for Frishman's gross earnings from his architectural business—$24,000 for 1979 and $11,000 for 1980—and, after averaging them, divided that figure by twelve and ordered a monthly levy of $1,500 against IBF.[10] We conclude that this approach reasonably applied the statute.

Section 16–579 provides that, when garnishment is warranted, the court may direct the corporation "to make payments on account of the judgment, in installments, based upon [1] a reasonable value of the services rendered by the judgment debtor under his employment or [2] upon the debtor's then earning ability."

■ The first standard is a familiar one in contract law. When there is no contractual provision for the amount of compensation for labor, the person performing the work is entitled to recover the "reasonable value" of the services. *See Plepel v. Nied,* 106 Ill.App.3d 282, 62 Ill.Dec. 197, 435 N.E.2d 1169 (Ct.App.1982) (absent express contract term, architect entitled to reasonable value of services); *Whitney v. Lea,* 134 Vt. 591, 367 A.2d 683 (1976) (same); 98 C.J.S. *Work and Labor* § 66(2) (1957) ("fair and reasonable value").

■ There are several available measures for "reasonable value." The first, and most favored, is market value. "The ser-

church founders for federal tax purposes); *G.M. Leasing Corp. v. United States,* 514 F.2d 935 (10th Cir.1975), *rev'd in part on other grounds,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (same); *All One Faith in One God State Universal Life Church, Inc. v. United States,* 76–1 STAND. FED. TAX REP. (CCH) ¶ 9409 (S.D.Cal. Mar. 9, 1976) (on basis of indicia of taxpayer's ownership and control of church, tax lien on church property was justified).

9. Neither party appears to be prejudiced by the use of these stale figures. Plaintiff's motion to

compel discovery, dated October 28, 1981, requested information for the years 1977 through 1981 and was not a continuing request for discovery. Appellant, however, does not object that the figures are stale or otherwise not reflective of Frishman's personal income; he merely objects to the approach the court used.

10. Actually, Frishman's gross business earnings for 1979 and 1980 were $24,276 and $11,167, respectively. Thus, the court's methodology, strictly applied, would result in monthly payments of $1,477.

vice itself is the commodity to be valued.... [The employer] has received service that he requested, for which the plaintiff could have obtained a price in the market." 5 A. CORBIN, CORBIN ON CONTRACTS § 1112 (1964); *see National Savings & Trust Company v. Kahn,* 112 U.S. App.D.C. 155, 158, 300 F.2d 910, 913 (1962). Another possible measure is the actual value of the services to the employer, which could be somewhat lower than market value. *See, e.g., Werlin v. Reader's Digest Association, Inc.,* 528 F.Supp. 451, 467 (S.D.N.Y.1981) (dictum). Still another measure could be the amount actually received by the employee, since the employer at least would be estopped from asserting that the services were worth less. *See, e.g., Pollack v. Carlye Dress Corp.,* 76 F.Supp. 755, 763–64 (E.D.Mo.1948) (absent compensation term in employment contract, compensation actually received is deemed "reasonable value" of services, and failure of employer to object indicates acquiescence). In many instances, however, the compensation actually received may serve only as a floor for "reasonable value," since it could reflect substantial underpayment.

■ It follows that the amount of compensation that Frishman actually received from IBF—the rental payments for his office in Silver Spring, Maryland—at least serves as a floor for the "reasonable value" of his services.[11] *See Pollack,* 76 F.Supp. at 763–64; *Wyatt v. School District No. 104, Fergus County,* 148 Mont. 83, 88–92, 417 P.2d 221, 224–25 (1966) (value of rent-free living quarters was one item of damages for breach of teacher's employment contract). The question, therefore, is whether the trial court appropriately used market value—Frishman's gross annual receipts from the architectural business—as the measure of "reasonable value of the services rendered."

Obviously, gross annual receipts are greater than the actual value of those services to IBF, since IBF had related overhead costs. Indeed, on the Frishmans' joint federal income tax returns for 1979 and 1980, Frishman showed expenses attributable to his architectural business of $26,686 and $22,020, respectively, for net business losses in those years of $2,410 and $10,853, respectively. Thus, we confront squarely the question whether, when there is great disparity between gross and net income (loss), the gross receipts can be said to reflect the "reasonable value" of services within the meaning of § 16–579.

■ We perceive no reason why the trial court's use of market value should not be honored in this case. First, the statute refers to the "reasonable value of the services rendered by the judgment debtor," not merely the reasonable value to the employer; the statute itself does not command use of a "net" rather than "gross" value. Second, Alpern's judgment against Frishman substantially predated any architectural expenses that would offset current IBF/Frishman income; thus, it is equitable to deem IBF accountable to Alpern off the top, rather than to subordinate that debt to the claims of more recent suppliers. It follows that the $1,500 per month levy, reflecting market value of Frishman's services to IBF, was soundly calculated. *See supra* note 10.[12]

---

**11.** Frishman took a business rent deduction in the amount of $2,583 for 1977, $4,271 for 1978, $4,320 for 1979, and $5,006 for 1980. The annual rent for this office under the lease for the period from October 1, 1980 to September 30, 1983, was $22,506.12. The record does not contain an IBF office lease for an earlier period. If we assume that the lease for the period (1979–80) that the trial court used to calculate the monthly installments had a comparable annual rent, it is apparent that Frishman personally deducted only a portion of IBF's rent. This follows from the fact that IBF had at least two functions: Frishman's architectural services and the family investment business conducted by his wife.

**12.** D.C.Code § 16–579 (1981) offers, as an alternative measure, "the debtor's then earning ability." *See supra* note 5. We do not pause to conduct an analysis of that language.

## V.

We conclude that the motions judge did not err when he found that appellant Frishman was rendering services to IBF and accordingly ordered a levy of $1,500 per month against IBF until Alpern's judgment against Frishman is satisfied.

*Affirmed.*