WINDOWMASTER CORPORATION, a Florida corporation, et al., Plaintiffs,

v.

MORSE/DIESEL, INC., a corporation, et al., Defendants.

RUSH PRESBYTERIAN ST. LUKE'S MEDICAL CENTER, Plaintiff,

v.

SAFECO INSURANCE CO. OF AMERICA and Windowmaster Corporation, Defendants.

Nos. 87 C 2854, 85 C 8998.

United States District Court, N.D. Illinois, E.D.

Jan. 6, 1988.

## MEMORANDUM OPINION AND ORDER

McGARR, District Judge.

This cause is before the court on the motion of plaintiffs Nathan and Bernice Walberg ("the Walbergs") for summary judgment in their favor as to the counterclaim of Safeco Insurance Company of America ("Safeco"). Also before the court is Safeco's motion for summary judgment on the issue of liability against Windowmaster Corporation ("Windowmaster") and the Walbergs, or for judgment on the pleadings. For reasons which follow, the Walbergs' motion is denied and Safeco's motion is granted.

Safeco's counterclaim is based upon a General Indemnity Agreement ("GIA") Windowmaster and the Walbergs signed in favor of Safeco on April 16, 1973. Safeco required this agreement before issuing construction performance bonds for Windowmaster as principal and the Walbergs in their individual capacities, as additional personal indemnitors. The 1973 GIA applied to a bond Safeco issued for Windowmaster in favor of Morse/Diesel, obligee, to support a subcontract entered into between Windowmaster and Morse/Diesel for construction of part of a project known as "Phase III A" of Rush Presbyterian St. Luke's Medical Center.

In June of 1981, Morse/Diesel declared Windowmaster to be in default under its subcontract. According to the GIA, the obligee's declaration of default entitled Safeco to also deem Windowmaster in default.

In July of 1981, Safeco and Morse/Diesel entered into a letter agreement for the completion of the project. By this agreement, Windowmaster, the defaulted principal, was to continue to fabricate and construct the curtainwall for the project because of the excessive cost of hiring a new contractor. The letter stated that Windowmaster's subcontract was not reinstated by

the agreement. On July 16, 1981, Windowmaster Corporation, by its president, Nathan Walberg, and the Walbergs, individually, signed an acknowledgement of the letter agreement and assured Safeco of their cooperation.

Safeco monitored the completion of the work through a consulting firm, Gambal & Associates. Safeco also advanced funds on the project directly to Windowmaster's subcontractor and vendors.

Now Safeco seeks summary judgment on the issue of liability of Windowmaster under the GIA. According to the GIA, Safeco may demand all losses and expenses incurred by the surety on account of any breach of the agreement.

The Walbergs argue that Safeco is not entitled to recovery under the GIA because Safeco violated the terms of the GIA by discharging its obligation to Morse/Diesel in a manner not permitted by the GIA. Specifically, the GIA sets forth three remedies for the surety in event of default: take possession of the work and arrange for its completion by another; take possession of the contractor's equipment and supplies; or loan money to the contractor to complete the contract. Since Safeco worked out the letter agreement of July 16, 1981 and permitted Windowmaster to finish the work, the Walbergs argue Safeco chose a course of action not within the exclusive list of remedies in the GIA. The Walbergs contend that the doctrine of *expressio unius est exclusio alterius* mandates exclusion of all remedies not specified in the GIA.

In support of their argument, the Walbergs offer portions of depositions of Safeco personnel stating that Safeco did not act as completing surety, did not finance Windowmaster, and did not take possession of its equipment.

Safeco responds that it pursued all of its enumerated remedies at various times during construction of the Medical Center project. Safeco argues that it arranged for completion of the work by entering into the letter agreement with Morse/Diesel, advanced funds on the project regarded by Safeco as loans to its principal, and at times took possession of equipment and materials for finishing the project.

Safeco also contends that the remedies provided in the GIA are not exclusive. Safeco notes that the language of the contract does not specify the exclusivity of the remedies. Therefore, even if the letter agreement is not covered in the enumerated remedies, Safeco contends that it was a permissible remedy under the GIA.

The court notes that while the letter agreement of July 16, 1981 was not a formal takeover agreement for Safeco to act as a completing surety, nor was there a financing agreement for a loan, the letter arrangement does involve elements of completing and financing. The court need not, however, characterize the arrangement as one of the enumerated courses of action. Even if the arrangement does not fall into one of those listed, it is a remedy option within Safeco's rights.

The general rule is that parties may expressly limit remedies by agreement; however, if a remedy is to be exclusive, "the contract must clearly indicate that the parties intend that the stipulated remedy be the sole or exclusive remedy." *Structural Sales, Inc. v. Vavrus*, 132 Ill.App.3d 718, 87 Ill.Dec. 619, 477 N.E.2d 745 (Ill.App.3d Dist.1985), citing *Board of Regents v. Wilson*, 27 Ill.App.3d 26, 326 N.E.2d 216 (1975). Applying this principle to the present case, the court notes that no exclusivity of remedies clause exists in the GIA. Further, Windowmaster's signed acknowledgement indicates at least acquiescence in this remedy option. Therefore, the court construes the letter agreement as additional to remedies listed in the GIA.

No genuine issue exists as to the existence of the GIA contract between Safeco and Windowmaster, the propriety of Safeco deeming Windowmaster in default, or Safeco's incurring expenses as a result of the default. Safeco is therefore entitled to summary judgment on the issue of Windowmaster's liability.

Accordingly, the Walbergs' motion is denied and Safeco's motion is granted.