WINDOWMASTER CORPORATION, a Florida corporation, Nathan C. Walberg, and Bernice Walberg, Plaintiffs,

v.

MORSE/DIESEL, INC., a Delaware corporation, Morse/Diesel, Inc. of Illinois, an Illinois corporation, Rush–Presbyterian St. Luke's Medical Center, Inc., and Safeco Insurance Company of America, a Washington corporation, Defendants.

RUSH–PRESBYTERIAN ST. LUKE'S MEDICAL CENTER, Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA, and Windowmaster Corporation, Defendants.

Nos. 87 C 2854, 85 C 8998.

United States District Court, N.D. Illinois, E.D.

Dec. 29, 1988.

Robert J. Schuckit, Keck, Mahin & Cate, Chicago, Ill., for Windowmaster.

T. Scott Leo, Pretzel & Stouffer Chtd., Chicago, Ill., for Safeco.

Peter Petrakis, Katten, Muchin & Zavis, Chicago, Ill., for Morse/Diesel.

John McGinnis, Altheimer & Gray, Chicago, Ill., for Rush Presbyterian.

*MEMORANDUM OPINION*

BRIAN BARNETT DUFF, District Judge.

Windowmaster Corporation, Nathan C. Walberg, and Bernice Walberg have asked this court to vacate an order of summary judgment entered in this case by Judge Frank McGarr, prior to transfer of this case to this court. See *Windowmaster Corporation v. Morse/Diesel, Inc.*, 722 F.Supp. 1530 (N.D.Ill.1988). The plaintiffs make this request pursuant to Rule 60(b)(6), Fed.R.Civ.P. The party that obtained judgment in its favor, Safeco Insurance Company of America, opposes the motion.

The facts and the procedural history of this case are accurately presented in Judge McGarr's opinion. It is clear from that opinion, as well as the briefs submitted for and against the cross-motions for summary judgment, that the parties were most interested in whether the General Indemnity Agreement ("GIA") governing the rights and duties of the parties allowed Safeco to remedy a default of Windowmaster on a construction project in the manner that Safeco chose. Judge McGarr concluded that it did. Having determined this, the Judge went on to state the following:

> No genuine issue exists as to the existence of the GIA contract between Safeco and Windowmaster, the propriety of Safeco deeming Windowmaster in default, or Safeco's incurring expenses as a result of the default. Safeco is therefore

entitled to summary judgment on the issue of Windowmaster's liability.

*Windowmaster,* Mem.Op. at 1531.

Judge McGarr did not elaborate further on the central contention raised by the plaintiffs in their brief in opposition to Safeco's motion for summary judgment: whether Safeco acted in good faith in judging that Windowmaster was in default. The plaintiffs pointed to numerous factual disputes surrounding Safeco's acceptance of Morse/Diesel, Inc.'s declaration of Windowmaster's default. While Judge McGarr's opinion could be read to have considered these disputes—he states, after all, that "[n]o genuine issue exists as to ... the propriety of Safeco deeming Windowmaster in default"—the Judge did not discuss any of the facts raised by the plaintiffs, nor did he mention even the words "good faith." Since this court now stands in Judge McGarr's shoes, it is incumbent upon this court to address the plaintiff's argument directly.

The plaintiffs and Safeco signed the GIA in April of 1973. The plaintiffs entered into the GIA

> in favor of companies of the Safeco Insurance Group for the purposes of indemnifying them from all loss and expense in connection with any Bonds of Windowmaster Corporation [and] Window Installers Services, Inc., as Contractor, for which any Safeco Insurance Group company is or hereafter becomes surety.

The GIA provided further:

> With respect to claims against Surety:
> 1. Surety shall have the exclusive right for itself and the Undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed.
> 2. Surety may incur such expenses, including attorney's fees, as deemed necessary or advisable in the investigation, release and payment of such claims.
> 3. Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.

Armed with these rights, Safeco responded to a declaration by Morse/Diesel, Inc. on June 18, 1981, that Windowmaster was in default on a performance bond. Safeco chose to complete the project, thus giving rise to the dispute that was at the forefront of Judge McGarr's opinion.

The plaintiffs contend that Safeco acted too hastily in accepting the Morse/Diesel declaration of default. They submit that as early as December 1980, a Safeco claims representative knew that Morse/Diesel may have been interfering with Windowmaster's performance of its subcontract. Evidence of such interference—available to Safeco—allegedly grew through the first half of 1981. The plaintiffs contend that the evidence was such that when Morse/Diesel declared the default, Safeco attempted to persuade Morse/Diesel to change its mind. This proved unsuccessful, and so Safeco decided to complete the project.

The plaintiffs argue that, had Safeco made a good faith investigation of the circumstances of the default—which should have followed from the information available to its agents prior to Morse/Diesel's declaration—it would have found that there was no basis for accepting the default, and thus there would have been no reason to settle Morse/Diesel's claim on the terms that Safeco chose.

Before addressing the merits of the plaintiffs' contention, this court must decide which law applies to this case. It is undisputed that the GIA covered the relationship of the parties. That contract does not state which law applies to disputes under the contract, so this court must look elsewhere for the applicable law. Judge McGarr applied Illinois law to this dispute, without objection from the parties; in rearguing the motion for summary judgment before this court, the parties again have indicated that Illinois law applies. This court will thus accept the parties' stipulation. See *City of Clinton, Ill. v. Moffitt,* 812 F.2d 341, 342 (7th Cir.1987) (parties can stipulate to the applicable substantive law within broad limits).

The first question is what duties Safeco owed to the plaintiffs in settling Morse/Diesel's claim. The GIA would suggest that Safeco's power with respect to the investigation, acceptance, and settlement of claims is absolute: it had "the exclusive right for itself" and the plaintiffs to determine in good faith how to handle suits upon validly issued bonds. Safeco urges this court to interpret this language according to its plain meaning, as the court would construe the language of any contract. See *Plepel v. Nied*, 106 Ill.App.3d 282, 290–91, 62 Ill.Dec. 197, 204, 435 N.E.2d 1169, 1176 (1982); *Montgomery Ward & Co. v. Wetzel*, 98 Ill.App.3d 243, 251, 53 Ill.Dec. 366, 372, 423 N.E.2d 1170, 1177 (1981); *National Bank v. West Construction Co.*, 41 Ill.App.3d 686, 689, 355 N.E.2d 43, 47 (1976) (indemnity contracts generally construed as any other contract).

The plaintiffs, however, rightly point out that this was no ordinary contract—rather, it was part of a suretyship contract. The Illinois courts consider indemnity agreements offered in consideration for the issuance of a performance bond as part of the surety relationship, and not as a separate contract. See *Seaboard Surety Co. v. Glenayre Estates, Inc.*, 114 Ill.App.2d 341, 252 N.E.2d 712 (1969) (applying common law of suretyship to indemnity contract between surety and principal). The reason for this rule, in all likelihood, is that such contracts express in fact what is implied in law: the surety's right to reimbursement from the principal for amounts paid on valid debts of the principal. See, for example, *Runyan v. Moon*, 267 Ill.App. 312 (1932).

Since this court must construe the GIA according to principles of suretyship law, other words in the GIA begin to take on more importance than those positing Safeco's "exclusive right" to handle claims—specifically, the language requiring Safeco to act in good faith. Under Illinois law, contracts of compensated suretyship are deemed to be contracts of insurance. See *Fisher v. Fidelity & Deposit Co.*, 125 Ill. App.3d 632, 640, 80 Ill.Dec. 880, 887, 466 N.E.2d 332, 339 (1984); *Town of City of Peoria v. Rauschkolb*, 333 Ill.App. 411, 414, 78 N.E.2d 123, 124 (1948). Under an insurance contract, there are instances when the insurer owes its insured a duty of fair treatment. The court in *Cernocky v. Indemnity Ins. Co. of N. America*, 69 Ill. App.2d 196, 206, 216 N.E.2d 198, 204 (1966), summarized those instances quite succinctly, in a case where an insurer was found liable for having failed to undertake settlement negotiations—this despite a contract allowing it complete discretion as to settlement:

So long as the recovery sought in an action may not exceed the policy limits, the insurer need not consider the interests of the insured in conducting the defense. When, however, an action arises in which the recovery may exceed the policy limits of the insured's protection, the interests of the insured must also be of concern to the insurer in the conduct of the litigation. It is at this point that the duty arises on the part of the insurer to the insured.

As the *Cernocky* court noted, the insurer's obligation to its insured ripens when the insurer's conduct creates a risk that the insured will bear some of the loss. Applying the policy expressed in *Cernocky* to this dispute, it is clear that Safeco's obligation is overripe: under the terms of the GIA, the plaintiffs bore almost all of the risk of loss incurred by Safeco, leaving Safeco with the only risk that the plaintiffs would not fulfill their obligations under the GIA.

Safeco thus owed the plaintiffs a duty under Illinois law. The *Cernocky* court went on to articulate just what this duty is. The court rejected formulations of the duty that stated that the insurer must give "some" consideration to the insured's interest, and instead expressed the duty as follows:

"[I]n investigating, defending, considering questions of settlement, and on the question of appeal, the insurance company must give the interests of the insured equal consideration with its own interests and it must in all respects deal fairly with the insured. The applicable rule is well stated in *American Fidelity & Cas-*

*ualty Co., Inc. v. G.A. Nichols Co.,* [173 F.2d 830, 832 (10th Cir.1949)]: 'When a liability insurance company by the terms of its policy obtains from the insured a power, irrevocable during the continuance of its liability under the policy, to determine whether an offer of compromise of a claim shall be accepted or rejected, it creates a fiduciary relationship between it and the insured with the resulting duties that grow out of such a relationship. Under policies like those here involved, the insurer and the insured owe to each other the duty to exercise the utmost good faith. While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to do it acts in bad faith.' "

*Id.* at 206–07, 216 N.E.2d 198, quoting *Ballard v. Citizens Cas. Co. of New York,* 196 F.2d 96, 102 (7th Cir.1952).

Under Illinois law, the question of whether the insurer has acted in good faith towards its insured is a question of fact. See *Powell v. Prudence Mut. Cas. Co.,* 88 Ill. App.2d 343, 232 N.E.2d 155 (1967) (jury to decide whether insurer acted in bad faith in refusing to settle case within maximum limits of policy, resulting in loss to insured). The parties dispute whether Safeco gave equal consideration to the plaintiffs' interests in settling with Morse/Diesel, and the evidence on both sides prevents this court from determining the answer itself. For this reason, summary judgment was not appropriate on the issue of the plaintiffs' liability under the GIA.

This court grants the plaintiffs' motion to vacate the judgment entered in favor of Safeco on the issue of the plaintiffs' liability under the GIA.