## Case No. 8,332.

### LEWIS v. SMITH.

[2 Cranch, C. C. 571.][1]

Circuit Court, District of Columbia. May 17, 1825.

GARNISHMENT—MONEY DEPOSITED IN BANK.

1. If money be deposited in a bank, the cashier is not liable as garnishee of the depositor.

2. If the garnishee is not the debtor of the defendant, he is not liable to judgment of condemnation.

3. If the defendant himself could not recover against the garnishee, the plaintiff cannot.

[This was an action at law by Joseph Lewis against Richard Smith, garnishee of Nimrod Farrow.]

Attachment under the Maryland act of 1795 (chapter 56), and laid in the hands of Richard Smith, cashier of the office of the Bank of the United States at Washington, who was summoned as garnishee. An act of congress for the relief of Nimrod Farrow and Richard Harris, passed on the 3d of March, 1825, c. 84 (6 Stat. 331), appropriated $73,-747.78 to be paid to Nimrod Farrow, a contractor for erecting a fort on Dauphin Island, provided that before he should receive it he should give bond to the secretary of war in the penal sum of $120,000, conditioned to appropriate the money towards the payment of the debts contracted by Farrow & Harris, or either of them, for supplies furnished, and services rendered in the erection of the fort; and to pay to Harris half of the surplus, if there should be any. The bond was given, the money received, and $21,500 of it deposited in the office of the Bank of the United States at Washington, of which the garnishee Richard Smith was the cashier, who gave Farrow two certificates; one purporting that Nimrod Farrow had credit in the office of the Bank of the United States at Washington, for $15,000, subject to his checks; and the other that N. F. had left with him $6,500, as a special deposit in lieu of special bail, to be released on his giving bail to the satisfaction of the marshal. This appeared upon the answers of the cashier to the interrogatories filed.

Mr. Jones, for the garnishee, objected to judgment against him. 1st. Because he had nothing in his hands, and was not indebted to Farrow, the defendant; and 2d. Because, if the Bank of the United States had been

[1] [Reported by Hon. William Cranch, Chief Judge.]

legally summoned as garnishee, they never held the money as the general property of N. Farrow. He was only a statutory trustee to apply the money to certain purposes mentioned in the act.

R. P. Dunlop and Mr. Key, for plaintiff.

Of the $6,500, Mr. Smith was the special bailee. The sum of $5,500, was drawn out by Farrow before service of the attachment, but $1,000 of that special deposit remained in Mr. Smith's hands at the time of the service of the attachment, and was afterwards drawn out by Mr. Farrow. It is sufficient if we show property of the defendant in the hands of the garnishee, in his possession, or under his care. After Mr. Farrow had given bond to apply the money according to the act, it became absolutely his property. The Bank of the United States could not be a garnishee, because it could not be held to bail under the 6th section of the act of 1795.

Before CRANCH, Chief Judge, and THRUSTON, Circuit Judge.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, contra). The return of the marshal, upon the writ of attachment, is "attached credits in the hands of Richard Smith, cashier of the Branch Bank of the United States at the city of Washington, and summoned him as garnishee, on the 30th of April, 1825." The plaintiff has filed interrogatories which Mr. Smith has answered; and the question is whether Mr. Smith had in his hands, at the time of the attachment, or since, any credits of Mr. Farrow; or, in other words, whether he was, at the time of the attachment or since, the debtor of Mr. Farrow. Mr. Lewis, claiming in the right of Mr. Farrow, cannot be in a better situation than Mr. Farrow himself. It appears, by the answers of Mr. Smith, that $21,500 "were deposited, or left in the office of the Bank of the United States in Washington; of which $6,500 were left as a special pledge for the indemnity of the marshal, lieu of special bail." That $5,500, part of those $6,500, were released by the marshal, and paid to Mr. Jones upon the order of Mr. Farrow, on the 23d of April, 1825, seven days before the attachment was served; and that the other $1,000, being the residue of the $6,500, were released by the marshal, and paid to Turner Ashby, upon the order of Mr. Farrow, on the 3d of May, 1825, three days after the service of the attachment. Mr. Smith says, that when the $21,500 were deposited, he gave Mr. Farrow two certificates; one purporting that Nimrod Farrow had credit in the office of the Bank of the United States at Washington for $15,000, subject to his checks; and the other purporting that Nimrod Farrow had left with him $6,500, as a special deposit in lieu of special bail, to be released on his giving bail to the satisfaction of the marshal. Was Mr. Smith at any time the debt-

or of Mr. Farrow? The money was deposited in the Bank of the United States to the credit of Mr. Farrow. If Mr. Smith had been dismissed from his office of cashier, on the day of the deposit, he could not have taken the money with him, nor drawn it from the bank. The bank was the only debtor of Mr. Farrow. Mr. Smith was never liable to Mr. Farrow for this money. It was not specifically holden by Mr. Smith, but went, at once, into the general cash fund of the bank, and Mr. Farrow had credit for it on the books of the bank. The only doubt I ever had, on this part of the case, was, whether Mr. Smith by the terms of his certificate to Mr. Farrow as to the $6,500, had not, by using the words "left with me," made himself personally liable. But, taking the whole of his answer together, I think the fair inference is, that the $6,500 were left with him in his character as cashier, and went into the general cash fund of the bank, and that the bank was answerable to Mr. Farrow for that sum, as well as for the residue of the $21,500, and that Mr. Smith did not make himself more responsible to Mr. Farrow for the $6,500, than for the residue.

It is said, however, that Mr. Smith had Mr. Farrow's property in his hands, possession, or charge, or under his care, and therefore, according to the expressions of the act of Maryland (1795, c. 56, §§ 5, 6), is liable to have that property condemned in his hands. It might be a sufficient answer to this suggestion, to say, that the marshal has not attached any property of Mr. Farrow in the hands, possession, or charge, or under the care of Mr. Smith. He attached nothing but credits; and if Mr. Smith was not the debtor of Mr. Farrow, Mr. Farrow was not the creditor of Mr. Smith, and consequently had no credits in his hands. The clause of the act of Maryland (1715, c. 40), which authorizes the attachment of credits, is the only clause applicable to the present question. But it does not appear that Mr. Smith ever had the property of Mr. Farrow in his hands, possession, or charge, or under his care. It was the bank that received Mr. Farrow's money, and took the charge of it. Mr. Smith was the keeper of the money of the bank only, and was liable only to the bank. He was never personally liable to Mr. Farrow.

In this view of the case, we do not think it necessary to say what weight ought to be given to the argument that this was a trust fund, and that Mr. Farrow might be restrained from paying away the money until the class of creditors described in the act for the relief of Nimrod Farrow and Richard Harris, should be satisfied. Nor do we give any opinion as to any equitable right which the creditors (intended to be protected by that act) might have, in any given case, to restrain him from exercising his legal rights, until their claims should be satisfied; nor as

to the right of Mr. Lewis to the benefit of this process of attachment, if it had been served on the Bank of the United States.

But, being of opinion that Mr. Smith never was the debtor of Mr. Farrow, we think we must refuse the judgment of condemnation.

THRUSTON, Circuit Judge, dissented.