Kimberly PHILLIPS, Plaintiff,

v.

Father Timothy SUGRUE, Defendant,

and

Marist Society of the Washington Province, Inc., Garnishee.

Civ. A. No. MISC. 93–411 (JR).

United States District Court, District of Columbia.

May 5, 1995.

Cynthia B. Malament, Fait & Malament, Rockville, MD, for plaintiff.

Thomas Dilenge, Mayer Brown & Platt, Washington, DC, for defendant.

## MEMORANDUM OPINION

ROBERTSON, District Judge.

This proceeding raises the question whether valuable but uncompensated services rendered by a judgment debtor to a garnishee may be subjected to garnishment under D.C.Code § 16–579 without proof that the garnishee is liable to the debtor.

On November 2, 1993, after a jury verdict, the U.S. District Court for the Eastern District of Arkansas entered a money judgment against Timothy Sugrue, a priest, for torts he committed against plaintiff while he was serving as a chaplain in the United States Air Force during the 1970s. Fr. Sugrue was then and is now associated with the Marist Society, a religious institute. Fr. Sugrue today lives "in community" at the Marist Society of the Washington Province, located in this District.

On January 11, 1995, upon receipt of a certified copy of the Arkansas judgment, the Clerk of this Court issued a writ of attachment to the Marist Society. Returning the writ, and responding to the interrogatories set forth thereon, the Marist Society stated that Fr. Sugrue was not employed by the Society and that he received no disposable wages from the Society.

Invoking D.C.Code § 16–579, plaintiff then moved to compel payments by the garnishee Marist Society. It appears from the record, and it is undisputed, that Fr. Sugrue works full-time as business manager for the Marist

Society of the Washington Province. He pays the bills, handles correspondence, maintains the Society's bank accounts and stock portfolio, supervises two paid employees, and otherwise manages the Society's secular affairs. Marist Society priests have taken vows of poverty. Those who have outside jobs turn over their income to the Marist Society, and the Society takes care of their expenses, pays their bills, and provides them with pocket money. Fr. Sugrue has no outside employment and contributes no outside income, but the Marist Society provides him with room, board and pocket money, reimburses his credit card expenses, and provides him with a vacation and travel allowance. The Marist Society has also spent more than $100,000 for his legal fees and more than $70,000 for his psychiatric treatment.

D.C.Code § 16–579 was enacted as part of the Code of Laws for the District of Columbia in 1959, Pub.L. No. 86–130, § 1, 73 Stat. 277 (1959). It provides:

> Where the judgment debtor claims or is proved to be rendering services to or employed by a relative or other person or by a corporation owned or controlled by a relative or other person, without salary or compensation, or at a salary or compensation so inadequate as to satisfy the court that the salary or compensation is merely colorable and designed to defraud or impede the creditors of the debtor, the court may direct the employer-garnishee to make payments on account of the judgment, in installments, and upon a reasonable value of the services rendered by the judgment debtor under his employment or upon the debtor's then earning ability.

Plaintiff argues that, on its face, the language of this statute provides a "special remedy" to a judgment creditor that is broader than traditional garnishment and does not depend on an employer-employee relationship. Since Fr. Sugrue is clearly "rendering services" to the Marist Society as its business manager and doing so "without salary or compensation," plaintiff asserts that she need only establish the reasonable value of those services in order to be entitled to a garnishment order directing the Marist Society to make installment payments based on that value.[1]

Before the enactment of § 16–579 an essential element of garnishment was that the garnishee be holding property of the judgment debtor or have a legal obligation to pay the judgment debtor. In *Lewis v. Smith*, 15 F.Cas. 498, 2 Cranch CC 571 (D.C.Cir.1825), it was held that if the judgment debtor himself could not recover against a garnishee, the judgment creditor could not do so. In *Zink v. Black Star Line, Inc.*, 18 F.2d 156, 157 (D.C.Cir.1927), it was observed that a judgment creditor's rights against a garnishee cannot be greater than those which the debtor would have in the absence of the garnishment.

There is no evidence that Congress intended to ignore that venerable element of the garnishment process in the sparse legislative history of § 16–579, which is reviewed in *IBF Corp. v. Alpern*, 487 A.2d 593, 596 (D.C. 1985). No court has discovered such an intent in the handful of reported garnishment cases decided since 1959 that deal with garnishment generally: *Donaldson v. Home Indemnity Co.*, 165 A.2d 492, 494 (D.C.1960) (proof of liability under an insurance policy necessary to garnishment of policy proceeds); *Peterson v. Government Employees Insurance Co.*, 434 A.2d 1389, 1391 (D.C.1981) (same); *Wrecking Corp. of America, VA., Inc. v. Jersey Welding*, 463 A.2d 678, 680 (D.C.1983) (whether garnishee was in fact indebted to judgment debtor or possessed any property belonging to the debtor was a critical factor).

The only reported garnishment case that directly involves § 16–579 is *IBF Corp. v. Alpern, supra*. That case is factually distinguishable from this one. There the judgment debtor was the owner and president of the corporate garnishee—a controlling person, unlike Fr. Sugrue. There, corporate arrangements may have been designed to "defraud or impede creditors of the debtor," while here there is no evidence that Fr.

---

1. Plaintiff was prepared to adduce expert testimony on the value of Fr. Sugrue's services at the hearing on the instant motion.

Sugrue's arrangement with the Marist Society was structured to avoid his responsibility to satisfy the Arkansas judgment.[2] The rule stated in Judge Ferren's opinion is not dependent upon the facts of that case, however, and it is here relied upon as a controlling statement of D.C. law:

> A judgment creditor who seeks to attach property of an entity other than a debtor has the burden of proving that the entity is liable to the debtor.

*IBF Corp. v. Alpern, supra,* at 596. That statement is consistent with the rest of the D.C. attachment and garnishment subchapter, which "applies only with respect to attachments upon wages," § 16–582, and which defines "garnishment" as a "procedure through which wages are required to be withheld," D.C.Code § 16–571(2), and "wages" as "compensation payable for personal services," § 16–571(1).

At the hearing on the motion to compel payments, conducted April 27, 1995, plaintiff offered only to prove that Fr. Sugrue is performing services for the Marist Society and that he receives valuable benefits from the Marist Society. She did not establish, nor did she offer to prove, that Fr. Sugrue is in a legally binding employment relationship with the Marist Society or that the Marist Society is "liable to the debtor."

Absent even a minimal offer of proof on the liability question, it is unnecessary to proceed to an inquiry that could raise substantial constitutional questions. The Marist Society relies on canonical law for its position that a "religious" has no enforceable right to be compensated for services rendered to a religious institute, even though the institute has undertaken to furnish for its members all things that are necessary for achieving the purpose of their vocations. While it might be possible to apply a "neutral principles" analysis to adjudicate the secular legal question of entitlement in a canonical law context, such an analysis is a constitutional tightrope, *see,* e.g., *Jones v. Wolf,* 443 U.S. 595, 602–04, 99 S.Ct. 3020, 3024–26, 61 L.Ed.2d 775

(1979); *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 710–14, 96 S.Ct. 2372, 2381–83, 49 L.Ed.2d 151 (1976); *Gonzalez v. Archbishop,* 280 U.S. 1, 16, 50 S.Ct. 5, 7, 74 L.Ed. 131 (1929); *Watson v. Jones,* 80 U.S. (13 Wall) 679, 20 L.Ed. 666 (1872)— one that the Court need not walk.

Two final notes relate to procedural matters. First, the District of Columbia attachment and garnishment statute provides for the garnishee, in a contested case, to file an answer defending against the garnishment and provides that "any issue of fact made may be tried with a jury if any party so desires." D.C.Code §§ 16–553, 16–551. Plaintiff's motion to compel payment, and the opposition thereto by the Marist Society, were treated by the Court as if they were, in effect, cross motions for summary judgment. All of the factual propositions recited in this opinion are undisputed.

Second, attached to the motion papers of the judgment creditor were documents and deposition transcripts that are asserted to be confidential and are thus subject to the provisions of a protective order entered by the U.S. District Court for the Eastern District of Arkansas. At the hearing, the parties made an oral request that such confidential materials be filed under seal. The resources of this Court for handling and storing sealed materials are scarce. Because none of the matters established by the proffered documents and deposition transcripts has been disputed, and because the record on which this determination has been made can be easily recompiled by either party if necessary, the confidential materials will not be filed under seal but instead will be returned to counsel for the judgment creditor, who will be responsible for preserving them in case of an appeal.

An appropriate order will issue with this opinion.

### *ORDER*

This matter comes before the Court upon plaintiff's motion to compel payments by the

---

**2.** Counsel for the Marist Society represented without contradiction that Fr. Sugrue has no outside employment because of Marist Society concern about his pedophilia problem but that if and when he does return to outside employment there would be no objection to garnishment of his income at its source.

garnishee. For the reasons stated in a memorandum opinion issued today it is this 4th day of May, 1995, by the Court **ORDERED** that:

1. Plaintiff's motion is **DENIED;**

2. The Clerk will return to counsel for plaintiff the exhibits attached to plaintiff's April 25, 1995, "Response to Garnishee's Opposition to Motion to Compel Payments pursuant to Writ of Attachment on a Judgment and List of Documents to be Entered at the Evidentiary Hearing," and any additional exhibits offered at the Court's April 27, 1995, hearing.

3. This proceeding is **DISMISSED.**