SCENTURA CREATIONS, INC., Plaintiff-Appellee, v. DANIEL J. LONG, Defendant-Appellant.

Second District   Nos. 2—00—0964, 2—00—1072 cons.

Opinion filed September 18, 2001.

James W. Hanauer, of Law Offices of Elliot Heidelberger, of Hanover Park, for appellant.

Erin Ladenberger and John J. Chitkowski, both of John J. Chitkowski, Ltd., of Glen Ellyn, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Daniel Long, appeals from the trial court's order granting summary judgment in favor of plaintiff, Scentura Creations, Inc., on its complaint for breach of a consignment contract. He also appeals from the trial court's order granting plaintiff's petition for attorney fees and the trial court's order that denied leave to file a counterclaim against plaintiff based on the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act or Act) (815 ILCS 505/1 *et seq.* (West 2000)). We reverse and remand.

Plaintiff is a manufacturer and distributor of rendition perfume products to independent wholesaler consignees. On November 29, 1995, defendant entered into a consignment contract with plaintiff. Pursuant to the contract, plaintiff was to provide defendant with perfume products. Defendant would sell the products to an end user for the consignment price. Payment of the consignment price for the perfume products was due when defendant sold the products to an end user. The agreement was for a term of 30 days and was automatically renewed unless one party gave written notice of termination. If defendant terminated the agreement, he was to hold all merchandise in his possession for a period of 30 days "until [plaintiff] shall have an opportunity to remove such merchandise."

Under the contract, defendant had the potential to be compensated by plaintiff for locating other consignees to enter into a business relationship with plaintiff. In the event plaintiff paid defendant a commission arising from the sale of merchandise by another consignee, the contract obligated defendant to pay plaintiff for the shipments of merchandise to the other consignees as though they had been shipped

to defendant. This provision of the contract was not specific concerning the compensation to be given to defendant for locating other consignees. It allowed plaintiff sole discretion in determining the amount of compensation to be given, if any. Paragraph 19 of the contract provided as follows:

"From time to time, at SCENTURA'S sole discretion, SCENTURA may offer incentives to CONSIGNEE to encourage or reward CONSIGNEE for bringing other consignees or in assisting other consignees, to or in furtherance of a business relationship with SCENTURA. Any and all compensation paid for such efforts, whether in the form of commissions or otherwise, shall, at all times be solely at the discretion of SCENTURA and CONSIGNEE shall not be deemed in any way to have earned, or be entitled to, any compensation. It is further understood and agreed that any compensation which may be paid to CONSIGNEE by SCENTURA arising out of the sales by SCENTURA to other consignees, notwithstanding any course of dealing or practice by and between SCENTURA and CONSIGNEE to the contrary, may be terminated by SCENTURA without notice at any time, without any liability to CONSIGNEE. Under no circumstances, will SCENTURA be obligated to pay to consignee any commissions or other compensation, except in SCENTURA's sole discretion, and notwithstanding anything to the contrary, SCENTURA shall not pay to CONSIGNEE any commissions or other compensation following the date of the termination of this agreement. It is further agreed by and between the parties that any commission or other compensation paid by SCENTURA to CONSIGNEE arising out of the sale of merchandise by any other consignee, shall be deemed for all purposes to obligate CONSIGNEE for any subsequent or future shipments by SCENTURA to such consignee whose sale of goods resulted in the payment of a commission, to guarantee to SCENTURA those same guarantees specified in paragraph 16 of this Agreement, as if the goods shipped to such other consignee had been shipped to CONSIGNEE herein. In that respect, any commissions or other compensation paid to CONSIGNEE for such sales by third parties, shall be deemed a fee and consideration for the guarantee by CONSIGNEE of such third party's performance under any such third party's consignment agreement with SCENTURA. CONSIGNEE's guarantee of such third party's consignment agreement with SCENTURA shall be for the entire amount that may be due to SCENTURA by such third party consignee, notwithstanding that other consignees might also, pursuant to the provisions similar to those contained herein, have guaranteed to SCENTURA such third party consignee's performance, it being understood and agreed that their liability is joint and several."

Plaintiff delivered 2,284 bottles of perfume to defendant. The consignment price for the perfume was $10 per bottle.

On January 11, 1999, defendant contacted plaintiff and advised that he was terminating his relationship with plaintiff. On January 28, 1999, plaintiff mailed defendant a letter demanding the return of the perfume products in his possession. Plaintiff also demanded that defendant return the perfume products in the possession of other consignees who entered into separate contracts with plaintiff.

Defendant returned all of the perfume in his possession to plaintiff. He also attempted to return the perfume of the other consignees as plaintiff requested. Nevertheless, on March 1, 1999, plaintiff filed a complaint against defendant, alleging breach of the consignment contract. The complaint alleged that plaintiff delivered merchandise on consignment to defendant and that defendant failed to tender the consignment price for the merchandise or return it to plaintiff in the same condition as received. The complaint alleged that defendant owed plaintiff a total of $31,236.44, plus court costs and attorney fees. The complaint was filed in the arbitration division. On defendant's first court appearance on March 31, 1999, an arbitration date of June 21, 1999, was assigned.

On April 1, 1999, defendant served plaintiff with a demand for a bill of particulars that sought a list of the merchandise delivered to defendant, a list of merchandise not returned or damaged, and a list of the cost of all items allegedly not returned or damaged. In response, plaintiff provided documentation indicating that it sought to hold defendant liable for 2,954 bottles of perfume at $10 per bottle not returned by other consignees, for 2,565 damaged perfume cartons at 50¢ per carton, and for freight charges in the amount of $500.37 for perfume returned by defendant to plaintiff.

Defendant filed a motion to continue the arbitration hearing and for time to conduct discovery. The motion asserted that defendant was unable to prepare his defense adequately because he was not in possession of any documents identifying the products delivered to the other consignees. He asserted that depositions of a representative of plaintiff and the other consignees were necessary to prepare for the arbitration hearing. The trial court allowed defendant an extension of time to file an answer to plaintiff's complaint but denied his motion to continue the arbitration hearing. Defendant filed an answer denying that he breached the consignment contract. His affirmative defenses indicated that plaintiff breached the agreement, that the agreement was not supported by consideration, that plaintiff destroyed evidence, and that the agreement was illusory and unconscionable.

The matter proceeded to arbitration as scheduled on June 21,

1999. The arbitration panel found in favor of defendant and against plaintiff. Plaintiff filed a notice of rejection of the arbitration award on July 13, 1999.

On July 15, 1999, defendant filed a motion for leave to file an amended answer and counterclaim. The motion asserted that, based on the deposition of Robert Hasty, vice-president of operations for plaintiff, taken the morning of the arbitration hearing, defendant learned that plaintiff was attempting to hold defendant liable for products delivered to eight other persons with their own contracts with defendant. Based on this testimony, defendant sought to file a counterclaim alleging that the contract at issue violated the Consumer Fraud Act. The trial court denied defendant's motion to amend his answer and set the matter for trial in September 1999.

The trial date was continued, and plaintiff filed a motion for summary judgment. The motion asserted that plaintiff entered into a consignment contract whereby defendant guaranteed the perfume delivered to other consignees. The motion asserted that, at the time of defendant's termination of the contract, defendant and other consignees referred by defendant were in possession of 6,563 bottles of perfume at a consignment price of $10 per bottle; that defendant returned 3,618 bottles of perfume to plaintiff on January 29, 1999; that 2,564 cartons for the bottles at 50¢ per carton were damaged at a replacement cost of $1,282; and that plaintiff incurred freight charges of $500.37 for the returned perfume bottles. Pursuant to the terms of the contract, plaintiff alleged that defendant owed a total of $31,236.44, which represented the cost of 2,945 bottles of perfume not returned by other consignees, freight charges, and damages to the returned cartons. The motion asserted that the terms of the contract indicated that it would be governed and interpreted by Georgia law and that under such law the contract was valid. According to plaintiff, defendant breached the contract by failing to return the perfume in possession of other consignees as plaintiff requested.

In response to the motion for summary judgment, defendant asserted that he complied with the contract in that he returned all of the perfume in his personal possession to plaintiff, that the contract specifically indicated that plaintiff was to bear the freight charges, and that the testimony of Robert Hasty, vice-president of plaintiff, established that plaintiff destroyed the alleged damaged perfume cartons. He further asserted that the Consumer Fraud Act renders the contract unenforceable and that paragraph 19 of the contract is illusory because it allows plaintiff complete discretion in determining whether to award defendant any commission for locating other consignees.

The trial court granted plaintiff's motion for summary judgment, and judgment was entered against defendant in the amount of $31,236.44, plus costs. Plaintiff filed a fee petition seeking attorney fees in the amount of $12,982.50 pursuant to the terms of the contract. The trial court granted the petition for fees. A second judgment was entered in favor of plaintiff and against defendant for attorney fees in the amount of $12,982.50.

Timely notices of appeal were filed from the trial court's orders granting summary judgment in favor of plaintiff and entering judgment against defendant in the amount of $31,236.44, awarding attorney fees in the amount of $12,982.50, and from the trial court's denial of defendant's motion for leave to file an amended answer to include a counterclaim. Defendant contends that the trial court erred in granting summary judgment in favor of plaintiff and in awarding attorney fees under the contract because the contract is void as against the public policy of the State of Illinois, is illusory and unconscionable, and violates the Consumer Fraud Act.

## I

■ Initially, we reject plaintiff's assertion that "there is no legal nor [sic] any factual allegation in the record that paragraph 19, or any other paragraph of the Agreement constitutes a chain referral sales technique." Although defendant was denied leave to amend his answer to include a counterclaim based on the Consumer Fraud Act following plaintiff's rejection of the award in arbitration, defendant's answer at the time the motion for summary judgment was filed included affirmative defenses that the contract was void against public policy and that it was not supported by consideration.

Plaintiff equates the inability to proceed on a counterclaim with the inability to raise the Consumer Fraud Act in opposition to plaintiff's motion for summary judgment. Contrary to plaintiff's contention, the fact that the trial court denied defendant leave to proceed against plaintiff in an action for damages under the Consumer Fraud Act does not prevent him from raising the Consumer Fraud Act and its provisions to illustrate the public policy of the state as a defense rather than a counterclaim. Further, the public policy issue was raised as an affirmative defense, and defendant raised the Consumer Fraud Act in opposition to the motion for summary judgment. Therefore, the issue of the application of the Consumer Fraud Act to the contract is properly before this court.

## II

■ Next, we address plaintiff's suggestion that the choice-of-law provision in the consignment contract requires this court to apply

Georgia law in interpreting the contract and its validity. An express choice-of-law provision contained in a contract will be given effect subject to certain limitations. *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 757-58 (1987). The primary limitation involves considerations of public policy. *Potomac Leasing*, 156 Ill. App. 3d at 758. In the seminal case of *McAllister v. Smith*, 17 Ill. 328, 334 (1856), our supreme court held that the law of the chosen forum should be given effect "where it is not dangerous, inconvenient, immoral, nor [*sic*] contrary to the public policy of the local government." Under this rationale, a party cannot rely on the protections of foreign law to enforce a contract that is illegal in the forum of the local government. See *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 359 (1997). Therefore, we must determine whether, under the law of our state, the consignment contract is valid and enforceable or whether it violates the public policy of this state.

### III

■ In response to plaintiff's motion for summary judgment based on the language of the consignment contract, defendant asserted that the contract was void as contrary to public policy. As a general rule, courts will not enforce a private agreement that is contrary to public policy. *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600*, 74 Ill. 2d 412, 424 (1979). The public policy of the State of Illinois is found in its constitution, its statutes, and the decisions of its courts. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341 (1989). In determining whether an agreement violates public policy, the courts must determine whether the agreement is capable of producing harm such that its enforcement would be contrary to the public interest. *O'Hara*, 127 Ill. 2d at 342.

■ The courts apply a strict test in determining when an agreement violates public policy. *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 181 Ill. 2d 214, 226 (1998). While the court has the power to invalidate all or part of an agreement on the basis of public policy, this power is used sparingly (*First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 359 (1997)), and the determination of whether an agreement is contrary to public policy depends on the facts and circumstances of the case. *Kleinwort*, 181 Ill. 2d at 226.

■ Defendant urges that the contract at issue is void as contrary to the protections of the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2000)). The Consumer Fraud Act was enacted to create broad protective coverage from many types of deceptive or unfair selling

techniques used by businesses and to provide consumers, borrowers, and business persons with broader protection than a common-law fraud action. *Peter J. Hartmann Co. v. Capital Bank & Trust Co.*, 296 Ill. App. 3d 593, 604 (1998). Although the Consumer Fraud Act may not have been intended to protect consumers from the consequences of bad bargaining, it was intended to protect consumers from unscrupulous merchants and tradespeople. *Ekl v. Knecht*, 223 Ill. App. 3d 234 (1991).

■ Section 2A of the Consumer Fraud Act applies to chain referral agreements or pyramid sales schemes. It provides as follows:

"The use or employment of any chain referral sales technique, plan, arrangement or agreement whereby the buyer is induced to purchase merchandise upon the seller's promise or representation that if buyer will furnish seller names of other prospective buyers or like or identical merchandise that seller will contact the named prospective buyers and buyer will receive a reduction in the purchase price by means of a cash rebate, commission, credit toward balance due or any other consideration, which rebate, commission, credit or other consideration is contingent upon seller's ability to sell like or identical merchandise to the named prospective buyers, is declared to be an unlawful practice within the meaning of this Act." 815 ILCS 505/2A(1) (West 2000).

■ While defendant contends that the consignment contract falls squarely within the protection of section 2A of the Act, plaintiff contends that the contract cannot be construed as a chain referral agreement or pyramid sales scheme because furnishing names of other consignees is not a condition precedent to defendant's financial gain. Plaintiff also asserts that section 2A of the Consumer Fraud Act does not apply because plaintiff did not "sell" merchandise, but, instead, it delivered the perfume on consignment. We find plaintiff's asserted distinctions to be unpersuasive and nothing more than an exercise in semantics. Whether they are characterized as a sale of merchandise or delivery on consignment, both the language of the agreement and the parties' actions based on the agreement, as indicated in the testimony at the arbitration hearing, clearly establish that defendant was compensated by plaintiff for referring other persons into the perfume sales business.

Robert Hasty, vice-president of operations for plaintiff, admitted that defendant received a commission or "override" from plaintiff for referring other consignees to enter into separate contracts with plaintiff. He explained that plaintiff "sells" perfume products to consignees, such as defendant, for $10 per bottle, thereby contradicting his own argument that a delivery on consignment is not a sale.

Depending on the number of additional consignees defendant referred to plaintiff, defendant would receive a $2 to $2.50 override on the price of the perfume for every bottle that was sold by plaintiff to the other consignees. Mr. Hasty characterized the compensation as a "commission for referring and guaranteeing the consignment of the person" defendant referred to the Scentura system. If defendant did not refer others into the Scentura system, he would receive no commission. Likewise, defendant would not receive a commission if he was not involved in selling perfume products himself.

When defendant terminated his relationship with plaintiff, plaintiff demanded the return of its perfume products in his possession. Plaintiff also demanded the return of its perfume products in possession of other consignees with separate contracts with plaintiff. At no time did plaintiff contact the other consignees with separate contracts to demand the return of the products in their personal possession. Instead, it relied on defendant to return the perfume of the referred consignees.

In our view, the consignment contract between plaintiff and defendant is properly characterized as a chain referral sales technique or pyramid sales scheme, which falls within the protection of section 2A of the Act. See *People ex rel. Hartigan v. Unimax, Inc.*, 168 Ill. App. 3d 718 (1988) (holding that a marketing scheme whereby the marketer obtained commissions dependent upon bringing others into the system fell within the definition of a prohibited "pyramid sales scheme" under the Consumer Fraud Act). The testimony at the arbitration hearing, provided in support of plaintiff's motion for summary judgment, unequivocally establishes that defendant was compensated by plaintiff for bringing other consignees into the Scentura system and that his compensation was contingent upon plaintiff's delivery of perfume to the other consignees. The contractual arrangement, which effectually rendered defendant a guarantor for the perfume delivered to the other consignees that defendant referred, places defendant at the top of the pyramid or head of the chain. The contractual relationship between plaintiff and defendant is an unlawful practice and is prohibited by section 2A of the Act.

By virtue of this legislative enactment, the state has determined that the eradication of chain referral sales techniques and pyramid sales schemes is an important interest. Although the power to declare a private contract void as contrary to public policy is to be used sparingly, we may utilize this power when the contract at issue is clearly contrary to the constitution, the statutes, or the decisions of the courts. See *First National Bank of Springfield*, 179 Ill. 2d at 359. We believe the contract at issue falls squarely within the prohibition of section 2A

of the Consumer Fraud Act and, therefore, violates public policy. For this reason, we interpret the contract under Illinois law.

Plaintiff's motion for summary judgment urged the court to enforce the contract and determine that defendant was in breach. Under Illinois law, this contract is unenforceable because it is contrary to public policy. Having determined that the contract is contrary to public policy and therefore unenforceable in its entirety, we reverse the trial court's order granting summary judgment in favor of plaintiff and entering judgment against defendant in the amount of $31,236.44. Since plaintiff's petition for attorney fees was based on the contractual provision, we also reverse the trial court's order that granted plaintiff's petition for fees and costs and entered judgment against defendant in the amount of $12,982.50.

## IV

Finally, we address defendant's contention that the trial court erred following plaintiff's rejection of the arbitration award in denying defendant's motion for leave to amend his answer to include a counterclaim against plaintiff based on the Consumer Fraud Act.

■ Section 2—608 of the Code of Civil Procedure (Code) governs counterclaims. Pursuant to this section, counterclaims are to be included as part of a defendant's answer to the complaint. 735 ILCS 5/2—608(b) (West 2000). Since defendant's answer did not contain a counterclaim, he sought, but was denied, leave to file an amended answer to include a counterclaim against plaintiff based on the Act.

Although section 2—608 provides that a counterclaim is to be included in defendant's answer to the complaint, it does not require a defendant to assert his rights by way of a counterclaim if it would be inconvenient or strategically inadvisable to do so or where the full extent of the damages was not known earlier. *Marsh v. Nellessen*, 235 Ill. App. 3d 998, 1001 (1992). Although the decision to grant leave to file a counterclaim rests within the discretion of the trial court (*Indiana Insurance Co. v. Hydra Corp.*, 245 Ill. App. 3d 926, 932 (1993)), section 2—616 of the Code provides for the liberal amendment of pleadings at any time before final judgment to add new causes of action, defenses, or counterclaims. 735 ILCS 5/2—616 (West 2000). In determining whether to grant leave to amend a pleading, the court should consider the timeliness of the amendment and whether other parties have been prejudiced or surprised by the proposed amendment. See *Hobart v. Shin*, 185 Ill. 2d 283, 292 (1998).

The facts of this court's opinion in *Marsh v. Nellessen* are substantially similar. There, the plaintiff filed a complaint in the arbitration division alleging that the defendant breached a construc-

tion contract. The defendant filed an answer to the complaint, denying that the plaintiff performed his duties under the contract and asserting affirmative defenses that alleged various defects in construction of the home. The case proceeded to arbitration, and the award was rejected by the plaintiff. A trial date was set for 3½ months later.

Two-and-one-half weeks in advance of the scheduled trial date, the defendant filed a motion for leave to file a counterclaim. The facts alleged in the proposed counterclaim were substantially similar to those raised in the affirmative defenses. When the trial court denied leave to file the counterclaim, the defendant initiated a separate cause of action substantially similar to the proposed counterclaim and a motion to consolidate the two cases. When the separate action was dismissed pursuant to section 2—619 of the Code, the defendant appealed both rulings. Since there was no showing of prejudice or surprise by the proposed counterclaim, we determined that the trial court abused its discretion in denying the defendant leave to amend the pleadings to include the proposed counterclaim.

■ As stated by this court in *Marsh*, the Code is to be construed liberally. 735 ILCS 5/1—106 (West 2000). Its purpose is to provide substantial justice and resolution on the merits rather than to impose procedural hurdles to litigation. *Marsh*, 235 Ill. App. 3d at 1002.

■ The counterclaim proposed by defendant in the present case was based on the Consumer Fraud Act. As in *Marsh*, plaintiff was on notice that defendant intended to prove that the contract was contrary to public policy, as this was raised as an affirmative defense in defendant's answer to the complaint. Furthermore, the case proceeded to arbitration, at which time defendant argued that the contract was contrary to the provisions of the Act. Therefore, there was no surprise to plaintiff by defendant's attempt to proceed on a counterclaim based on this theory.

Although the counterclaim was technically due at the time defendant filed his answer, there was no prejudice to plaintiff by its proposed timing. In fact, the record belies plaintiff's allegations of undue delay in the proceedings occasioned by defendant. Within 2½ months of defendant's filing his appearance, the case proceeded to arbitration. Within two days of the time plaintiff filed his notice of rejection of the arbitrator's award, defendant filed his motion for leave to file an amended answer to include a counterclaim.

While the trial court has the discretion to manage its docket to ensure that there is no undue delay in the resolution of proceedings, the interests and burden of the litigants are not secondary. At the hearing on defendant's motion for leave to file the counterclaim, plaintiff had the burden of illustrating prejudice or surprise. There

was no such showing, and the trial court denied leave to file the counterclaim solely because this issue was not brought before the panel of arbitrators. In the trial court's view, the arbitration proceeding was "99 percent final" and no new claims could be added.

Ironically, it was plaintiff and not defendant that rejected the arbitrator's award. We fail to see the significance of the failure to bring the counterclaim before the arbitration panel, since the rejection by plaintiff prolonged the litigation. If plaintiff did not deign to accept the arbitration decision, we fail to see prejudice in defendant's failure to bring the counterclaim before the arbitration panel.

As in *Marsh*, the fact that arbitration had proceeded does not, *ipso facto*, prohibit the filing of a counterclaim. In our view, defendant acted with diligence and did not occasion delay in proposing to file the counterclaim within two days of notice of plaintiff's rejection of the arbitrator's award. Considering that the court continued a scheduled trial date to allow plaintiff to file a motion for summary judgment and did not rule on the motion for 7½ months after it was fully briefed, any delay in the proceedings, as argued by plaintiff, was not occasioned by defendant. Plaintiff has shown no prejudice that would inure from the filing of the proposed counterclaim; thus, consistent with our rationale in *Marsh*, we determine that the trial court abused its discretion in denying defendant leave to file an amended answer to include a counterclaim against plaintiff based on the Consumer Fraud Act, and we remand the cause to the trial court solely for the purpose of adjudicating a counterclaim filed by defendant based on the Act.

For the foregoing reasons, the judgments of the circuit court of Du Page County are reversed, and the cause is remanded to the trial court for further proceedings consistent with the opinion of this court.

No. 2—00—0964, Reversed and remanded.
No. 2—00—1072, Reversed.

GROMETER and BYRNE, JJ., concur.