No. 2-09-0805     Filed:  8-6-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| HANS FLEISSNER, doing business as Hans Fleissner Builders, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 09--CH--398 |
| TIMOTHY R. FITZGERALD and TRACY E. FITZGERALD, | ) ) ) ) | |
| Defendants-Appellees | ) ) | |
| (The City of Rockford Water Department, Unknown Owners, and Nonrecord Claimants, Defendants). | ) ) ) ) | Honorable Ronald L. Pirrello, Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Hans Fleissner, doing business as Hans Fleissner Builders, appeals the circuit court order dismissing his complaint on a motion filed by defendants, Timothy R. Fitzgerald and Tracy E. Fitzgerald, pursuant to section 2--619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2--619(a)(9) (West 2008)).  We reverse and remand.

I. BACKGROUND

On May 7, 2009, plaintiff filed his first amended complaint, which alleged the following. Plaintiff was in the business of general contracting residential and commercial improvements in northern Illinois and southern Wisconsin.  On May 15, 2006, defendants orally contracted with

plaintiff for a remodeling project at defendants' home in Rockford. Plaintiff performed the work between May 18, 2006, and March 1, 2007, within the scope of the oral contract and within the scope of section 3 of the Mechanics Lien Act (770 ILCS 60/3 (West 2008)). Plaintiff billed defendants a total of $183,122.50 for the project, of which defendants paid $143,355.46. After applying a $1,200 credit for some damaged window screens, plaintiff alleged that defendants still owed $38,447.04 for the work performed under the oral contract.

Count I of the amended complaint pleaded a foreclosure claim of the mechanic's lien that plaintiff recorded on February 17, 2009, in the sum of $48,456, which included interest and attorney fees. Count II consisted of a breach-of-an-oral-contract claim. Count III was an unjust-enrichment claim, alleging that defendants have unjustly retained the benefits of plaintiff's services in the improvement of the property. Count IV pleaded quantum meruit, alleging that plaintiff conferred benefits upon defendants by improving their property and that it was unjust for defendants to retain the benefits without properly compensating plaintiff.

On March 18, 2009, defendants moved to dismiss plaintiff's complaint in its entirety pursuant to section 2--619(a)(9) of the Code because plaintiff violated provisions of the Home Repair and Remodeling Act (Act) (815 ILCS 513/1 et seq. (West 2008)). Specifically, defendants argued that, plaintiff breached the Act by failing to work under a written contract pursuant to section 15 of the Act (815 ILCS 513/15 (West 2008)) and by failing to provide defendants a copy of the "Home Repair: Know Your Consumer Rights" pamphlet pursuant to section 20 of the Act (815 ILCS 513/20 (West 2008)). Citing Smith v. Bogard, 377 Ill. App. 3d 842, 848 (2007), defendants argued that, because plaintiff's violations of the Act constituted an "unlawful act" under section 30 of the Act (815 ILCS 513/30 (West 2008)), the oral contract was void and plaintiff's claims were barred.

Plaintiff responded to defendants' motion by arguing that the Act did not clearly provide an affirmative defense to defendants. The legislative history of the Act demonstrated that the Act was intended to protect homeowners from the fraudulent business practices of those contractors that directly solicited offers for work. Plaintiff argued that defendants contacted him to perform the work because of his previous work for Tracy's father. Thus, defendants did not fall into the intended protected class of the Act. Further, no case law addressed whether the Act barred a contractor's recovery under equitable claims, such as quantum meruit and unjust enrichment. Plaintiff also argued that the Act did not bar him from recovering under the theory of an oral contract. Finally, plaintiff argued that defendants should be equitably estopped from using the Act as an affirmative defense where defendants understood and recognized the binding nature of their oral contract with plaintiff.

On July 1, 2009, the trial court issued a written order stating that plaintiff failed to comply with the provisions of the Act. Therefore, citing Smith, plaintiff was precluded from recovering any amount that he claimed was due for the work performed, whether based upon a legal or an equitable theory. The trial court dismissed the complaint with prejudice and determined that the lien referred to in count I was void and unenforceable. The order included language pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). Plaintiff timely appealed. On appeal, plaintiff makes many of the same arguments, including: (1) his equitable claims are not barred by the Act; (2) the legislative history of the Act makes the Act inapplicable to the facts at bar; and (3) equitable estoppel prevents defendants from asserting the Act as an affirmative defense.

## II. ANALYSIS

Section 2--619(a)(9) permits dismissal where the "claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS

5/2--619(a)(9) (West 2008). An "affirmative matter" in a section 2--619 motion is something in the nature of a defense that negates the cause of action completely. Tom Geise Plumbing, Inc. v. Taylor, 396 Ill. App. 3d 289, 300 (2009). A motion to dismiss under section 2--619 admits all well-pled facts in the complaint and all reasonable inferences that may be drawn therefrom. In re Chicago Flood Litigation, 176 Ill. 2d 179, 184 (1997). We review de novo a dismissal under section 2--619 of the Code. Tom Geise Plumbing, Inc., 396 Ill. App. 3d at 300.

We first reject plaintiff's argument that defendants are equitably estopped from raising the Act as an affirmative defense at all. Equitable estoppel would bar defendants from raising the Act as a defense where: (1) there were words or conduct by defendants that amounted to a misrepresentation or concealment of material facts; (2) defendants knew at the time the representations were made that they were untrue; (3) the truth respecting defendants' representations was unknown to plaintiff when the representations were made and when they were acted upon; (4) defendants intended or reasonably expected that their conduct or representations would be acted upon by plaintiff; (5) plaintiff, in good faith, reasonably relied upon the representations to his detriment; and (6) plaintiff acted, because of such representations or conduct, such that he would be prejudiced if defendants were permitted to deny the truth thereof. Vaughn v. Speaker, 126 Ill. 2d 150, 162-63 (1988). Plaintiff failed to argue any of the six elements of equitable estoppel and failed to address what misrepresentations defendants made to induce plaintiff's detrimental reliance. Therefore, we reject plaintiff's claim that equitable estoppel bars defendants from raising the Act as an affirmative defense.

Further, we reject plaintiff's argument that the legislative history and statutory interpretation of the Act "do not provide for application" of the Act in this case because plaintiff was not a "fly by night" contractor that solicited business from defendants. We disagree that the Act applies only to

contractors that solicit business and prey on the public, because the unambiguous language of the Act indicates that it applies to "persons engaged in the business of making home repairs or remodeling." 815 ILCS 513/5, 15, 20 (West 2008). Regardless of the legislative history of the Act, the plain language of the statute does not indicate that it applies only to persons engaged in the <u>solicitation</u> of home repair or remodeling business. See <u>Artisan Design Build, Inc. v. Bilstrom</u>, 397 Ill. App. 3d 317, 327-28 (2009). Rather, it applies to <u>any</u> person who contracts with a homeowner for home repair or remodeling exceeding $1,000.

Before proceeding to plaintiff's final argument on appeal, we note that in plaintiff's headings, he argues that the trial court erred in dismissing all counts, including his foreclosure and breach-of-contract claims. However, plaintiff's argument section fails to address why the trial court erred in dismissing the foreclosure and breach-of-contract counts. Accordingly, any arguments relating to the dismissal of counts I and II are forfeited. 210 Ill. 2d R. 341(h)(7); <u>Gay v. Frey</u>, 388 Ill. App. 3d 827, 832 (2009).

We now consider plaintiff's final argument, that equitable remedies are available to contractors in spite of their violations of the Act. We admonish plaintiff for his failure to clearly argue that both his <u>quantum meruit</u> and his unjust-enrichment claims should not have been dismissed. The brief seems to focus only on the <u>quantum meruit</u> count. Regardless of plaintiff's mediocre argument on this issue, we find the minimal reference to both counts III and IV sufficient to review the dismissal of both counts.

The Act sets forth the policy behind it in section 5:

"It is the public policy of this State that in order to safeguard the life, health, property, and public welfare of its citizens, the business of home repair and remodeling is a matter

affecting the public interest. The General Assembly recognizes that improved communications and accurate representations between persons engaged in the business of making home repairs or remodeling and their consumers will increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices in that business in this State." 815 ILCS 513/5 (West 2008).

Section 15 of the Act requires that "a person engaged in the business of home repair or remodeling" furnish to his customer a written contract or work order that includes the following: the total cost, including parts and materials listed with reasonable particularity and any charge for an estimate, and the business name and address. 815 ILCS 513/15 (West 2008). Section 15.1 of the Act requires that the contractor advise the consumer before the contract is accepted and executed of any contractual provision that requires the consumer to submit disputes to binding arbitration or waive his right to a jury trial. It further provides that a consumer be given the option to accept or reject the arbitration or jury-waiver provision and that the consumer must sign his or her name in the margin of the contract with the word "accept" or "reject" next to the provision. Failure to advise a consumer of the presence of a binding arbitration clause or jury-waiver clause or failure to secure the consumer signature and necessary acceptance or rejection "shall render null and void each clause that has not been accepted or rejected and signed by the consumer." 815 ILCS 513/15.1 (West 2008).

Section 30 of the Act addresses "unlawful acts":

"It is unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000 and before notifying and securing the signed acceptance or rejection, by the consumer, of the binding arbitration clause and the jury trial waiver clause

as required in Section 15 and Section 15.1 of this Act. This conduct is unlawful but is not exclusive nor meant to limit other kinds of methods, acts, or practices that may be unfair or deceptive." 815 ILCS 513/30 (West 2008).

Section 35 of the Act addresses enforcement. It provides that the Attorney General may bring an action in the name of the people of this state against any person or restrain and prevent any pattern or practice in violation of the Act. "All remedies, penalties, and authority granted to the Attorney General *** by the Consumer Fraud and Deceptive Business Practices Act shall be available to him or her for enforcement of this Act, and any violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act" (Consumer Fraud Act) (815 ILCS 513/35(b) (West 2008)).

Courts have held that, while the Act does not directly provide a consumer with a private cause of action against a contractor who has violated the Act, a consumer may file a claim under the Consumer Fraud Act provided that the consumer can prove that the contractor's violations of the Act caused his damages. Bilstrom, 397 Ill. App. 3d at 329; Kunkel v. P.K. Dependable Construction, LLC, 387 Ill. App. 3d 1153, 1159-60 (2009); see also 815 ILCS 505/2Z (West 2008) ("Any person who knowingly violates *** the Home Repair and Remodeling Act *** commits an unlawful practice within the meaning of [the Consumer Fraud Act]"). However, courts are divided on the implications the Act has on claims other than those based in the Consumer Fraud Act, including quantum meruit.

Quantum meruit literally means "as much as he deserves." First National Bank of Springfield v. Malpractice Research, Inc., 179 Ill. 2d 353, 365 (1997). A party seeking recovery on this theory must demonstrate the performance of services by the party, the conferral of the benefit of those services on the party from whom recovery is sought, and the unjustness of the latter party's retention

of the benefit in the absence of any compensation. First National Bank, 179 Ill. 2d at 365. Similarly, a plaintiff may ask the court to remedy the fact that a defendant was unjustly enriched by imposing a contract where there was no contract. Village of Bloomingdale v. CDG Enterprises, Inc., 196 Ill. 2d 484, 500 (2001). A quasi-contract, or contract implied in law, exists independent of any agreement or consent of the parties and is imposed in law to provide justice for the plaintiff. Village of Bloomingdale, 196 Ill. 2d at 500. "Such an action is based on the principle that no one ought to enrich himself unjustly at the expense of another." Village of Bloomingdale, 196 Ill. 2d at 500. "Liability is based on the principle of unjust enrichment and the contract is the remedy." (Emphasis in original.) Village of Bloomingdale, 196 Ill. 2d at 500. Few cases have discussed the Act and even fewer have discussed the Act's impact on equitable relief. Therefore, we briefly survey existing case law that addresses the Act.

With these equitable principles in mind, the Fourth District concluded in Bogard that the plaintiff, who failed to provide a written contract, was obligated to comply with the Act, failed to do so, and was precluded from recovering any amount he claimed was due. Bogard, 377 Ill. App. 3d at 848. The court stated that "[a]llowing a contractor a method of recovery when he has breached certain provisions of the Act would run afoul of the legislature's intent of protecting consumers, would reward deceptive practices, and would be violative of public policy." Bogard, 377 Ill. App. 3d at 848. The court then cited to American Home Assurance Co. v. Golomb, 239 Ill. App. 3d 37, 41 (1992), for the proposition that when a contract is void, the courts will assist neither party and will leave them where they have placed themselves, and Townsend v. Fassbinder, 372 Ill. App. 3d 890, 902 (2007), for the proposition that the doctrine of unclean hands precludes a party from taking advantage of his own wrong. With this limited analysis, the court concluded that, in addition to the

plaintiff's breach-of-contract claim being barred, his equitable claims were also barred because he failed to comply with the Act's written contract requirement.

In K. Miller Construction Co. v. McGinnis, 394 Ill. App. 3d 248, 250-51 (2009), appeal allowed, 234 Ill. 2d 523 (2009), the parties had entered into an oral contract for home remodeling exceeding $150,000. The plaintiff builder contended that its lien-foreclosure and breach-of-contract claims should not be barred by the Act's written contract requirement. The First District disagreed, citing the plain language of the Act, which required a written contract or written work order, and previous cases that held the same. McGinnis, 394 Ill. App. 3d at 253-54, citing Bogard, 377 Ill. App. 3d at 848; Central Illinois Electrical Services, L.L.C. v. Slepian, 358 Ill. App. 3d 545, 550 (2005). The court then disagreed with the Fourth District in Bogard and held that the plaintiff's equitable claim under quantum meruit was not barred by the Act. McGinnis, 394 Ill. App. 3d at 263.

The court concluded that the oral contract between the parties was unlawful under the Act. McGinnis, 394 Ill. App. 3d at 254. The court then concluded that such an unlawful contract did not preclude the plaintiff's right to pursue recovery under quantum meruit, because the Act did not intend to preclude equitable relief. McGinnis, 394 Ill. App. 3d at 264-65. After first concluding that an oral contract was unambiguously unlawful under the Act, the court then decided that "unlawful" was an ambiguous term and that, thus, the legislature did not intend to eliminate equitable relief for contractors. McGinnis, 394 Ill. App. 3d at 261-62. The court reasoned that a recovery under quantum meruit did not violate the public policy expressed by the Act, which sought to prevent deceptive practices by barring contractors from recovering the contract value for services. McGinnis, 394 Ill. App. 3d at 262. The court stated that to hold otherwise would provide cover under law to a consumer's dishonest refusal to pay for services rendered, an outcome that would increase disputes

and business costs and allow a homeowner to be unjustly enriched at the hands of an honest contractor. McGinnis, 394 Ill. App. 3d at 262-63. The dissenting justice argued that the majority was sanitizing an act declared unlawful by the legislature, by filtering it through a court of equity. McGinnis, 394 Ill. App. 3d at 267 (Wolfson, J., dissenting). While it appeared in its case that the contractor needed protection more than the consumer (a savvy real estate attorney), the court would not have been "wrestling with this issue if the contractor had done what the statute clearly told him to do--put it in writing." McGinnis, 394 Ill. App. 3d at 268 (Wolfson, J., dissenting).

This district recently held in Bilstrom that a contractor's failure to provide the consumer rights brochure pursuant to section 20 of the Act did not preclude a contractor from pursuing equitable or legal relief against a consumer that fails to pay amounts owed. Bilstrom, 397 Ill. App. 3d at 328-29. In recognizing that the Act pronounced the failure to provide a contract and notices of contractual provisions "unlawful acts" (citing McGinnis), this court noted that the failure to provide the consumer rights brochure was not deemed an "unlawful act" by section 30 of the Act and that the brochure was not required to be a part of the contract pursuant to section 15 of the Act. Bilstrom, 397 Ill. App. 3d at 328. However, this court reasoned that the failure to provide the consumer rights brochure may provide a consumer a private cause of action under the Consumer Fraud Act (815 ILCS 505/1 et seq. (West 2008)). Bilstrom, 397 Ill. App. 3d at 326-27. Thus, while not directly addressing the issue, Bilstrom recognized the Act's language in pronouncing the failure to provide a written contract an "unlawful act."

Most recently, the Third District has issued conflicting opinions on the Act. In Roberts v. Adkins, 397 Ill. App. 3d 858, 865 (2010), the court held that an oral agreement violated the Act and that, thus, there was no valid contract to form the basis for the plaintiff's mechanic's lien. Equitable

claims were not raised in Adkins. A week after Adkins was filed, the Third District issued an opinion holding the opposite. Fandel v. Allen, 398 Ill. App. 3d 177 (2010).[1]

In Allen, the Third District defied the preceding cases (including its previous holding in Slepian) that held that the lack of a written contract in violation of the Act's "unlawful acts" language barred a contractor's recovery under the Mechanics Lien Act. Instead, it held that a contractor's failure to work under a written contract did not bar it from pursuing either legal or equitable avenues for relief. Allen, 398 Ill. App. 3d at 185. It was undisputed in Allen that the plaintiff did not provide a written contract or the consumer rights brochure to the defendant. Allen, 398 Ill. App. 3d at 179. It was also undisputed that the plaintiff had provided the defendant a written work order but that it was not signed. Allen, 398 Ill. App. 3d at 179. The court, in reading the plain language of the sections we have cited herein, concluded that the purpose of the Act was to empower the Attorney General "to correct a potential harmful practice, not to deny an honest and competent workman the fair value of his work nor to give a homeowner a valuable benefit without paying for it." Allen, 398 Ill. App. 3d at 181. The court stated that the holding in Slepian was limited in that it held that a successor contractor was bound by the Act, and that Bogard read Slepian too broadly when it held that the Act could be used as an affirmative defense. Allen, 398 Ill. App. 3d at 182-83.

We first disagree with Allen's characterization of the Slepian case. In Slepian, the defendants raised the fact that the plaintiff failed to provide a written contract for work exceeding $1,000 as an affirmative defense to the plaintiff's foreclosure on a mechanic's-lien claim. Slepian, 358 Ill. App. 3d

---

[1]These cases, along with our Bilstrom decision, were released for publication after the parties filed their briefs in this matter. Subsequently, we directly ordered the parties to address these cases at oral argument, which they did on June 1, 2010.

at 547-48. The plaintiff argued that the Act did not apply to it, because it took over the work from another contractor. The trial court agreed and held that the plaintiff was entitled to a mechanic's lien. Slepian, 358 Ill. App. 3d at 548. The appellate court reversed on this issue, finding that despite the change in contractors, the Act applied to the plaintiff because it was contracting with the homeowner, and thus the trial court improperly found that the plaintiff was entitled to the lien without considering the language of the Act, which "clearly and unambiguously require[d]" a signed contract. Slepian, 358 Ill. App. 3d at 550. The court held that, to the "extent that the trial court's rulings relied upon a finding that the Act was not applicable, this cause is reversed and remanded for proceedings consistent with this opinion." Slepian, 358 Ill. App. 3d at 550. In our plain reading of Slepian, we cannot agree with Allen that the holding was limited such that the Act applied to the plaintiff but had no effect. The Allen court's reasoning is illogical in that it requires us to accept that the appellate court reversed and remanded the cause for the trial court to again rule in favor of the plaintiff on the mechanic's-lien issue but on a different basis when the appellate court could have simply affirmed on any basis in the record.

Moving on, the Allen court then reasoned that the Mechanics Lien Act did not differentiate between oral and written contracts (770 ILCS 60/1 et seq. (West 2008)) and that, thus, the only question in the case was whether the parties had a valid oral agreement. Allen, 398 Ill. App. 3d at 185-86. The court determined that the parties had a valid oral agreement, despite its violation of the Act, and that therefore the plaintiff's lien and foreclosure action were valid. Allen, 398 Ill. App. 3d at 185. The court further reasoned that the defendant could pursue a private right of action for the plaintiff's violations of the Act through an action under the Consumer Fraud Act. Allen, 398 Ill. App. 3d at 187. Because of the availability of relief under the Consumer Fraud Act, the purpose of the Act

was not rendered meaningless by the plaintiff's right to seek relief under the Mechanics Lien Act. Allen, 398 Ill. App. 3d at 187-88. Because Allen determined that the plaintiff's lien-foreclosure claim was founded upon a valid contract, it did not address whether the plaintiff's equitable claims were valid.

As stated earlier, plaintiff here forfeited any argument that he may have had that his foreclosure claim was valid. Accordingly, we need not consider whether Allen properly determined that the Act could not be raised as an affirmative defense to the lien-foreclosure claim. Further, we are not bound by the outcomes reached or analyses employed by the First, Third, or Fourth District, but we keep their positions in mind while addressing the issue anew. We note that the supreme court has yet to provide guidance on this issue. The majority in McGinnis highlighted the dissenting opinion in MD Electrical Contractors, Inc. v. Abrams, 228 Ill. 2d 281, 309 n.5 (2008) (Freeman, J., dissenting, joined by Burke, J.) and used the dissent's failure to cite Bogard in its footnote as evidence that the Bogard decision did not answer the quantum meruit question to its satisfaction. We disagree on this point. The question before the court in Abrams was merely whether the Act applied to a subcontractor, and the majority held that it did not. Abrams, 228 Ill. 2d at 296. The court then determined that the plaintiff had forfeited its quantum meruit argument on appeal. Abrams, 228 Ill. 2d at 296. The dissent pointed out that the majority relied on the assumption that the Act could be used as an affirmative defense, without addressing whether that assumption was correct. Abrams, 228 Ill. 2d at 300 (Freeman, J., dissenting, joined by Burke, J.). In footnote 5, Justice Freeman stated that he expressed no opinion as to whether the legislature intended to abolish the common-law remedy of quantum meruit. Abrams, 228 Ill. 2d at 309 n.5 (Freeman, J., dissenting, joined by Burke, J.). Unlike the majority in McGinnis, we do not make the leap from what Justice Freeman stated, that

-13-

he had no opinion on the issue other than that the majority should have analyzed the issue, to conclude that the supreme court disagreed with the holding in Bogard. We take Justice Freeman's words on their face--that he believed the court should have analyzed that issue instead of deeming it forfeited.

We are left to answer a question yet to be asked of this district: Are equitable remedies, such as quantum meruit and unjust enrichment, available to parties that entered an oral contract in violation of the Act? We find that Bogard lacks sufficient analysis to persuade us to follow it and that the logic in McGinnis is more persuasive that a violation of the Act does not preclude a contractor from obtaining equitable relief.

While we need not address whether an oral contract may support plaintiff's legal claim under a mechanic's lien despite the Act's written contract requirement, or stated differently, whether the Act may be raised as an affirmative defense to bar a mechanic's lien, we will address whether this oral contract violates the public policy of this state to determine whether plaintiff may obtain equitable relief.

Courts will not enforce a private agreement that is contrary to public policy. Scentura Creations, Inc. v. Long, 325 Ill. App. 3d 62, 69 (2001). The public policy of this state is found in its constitution, its statutes, and the decisions of its courts. Scentura Creations, 325 Ill. App. 3d at 69. In determining whether an agreement violates public policy, courts must determine whether the agreement is capable of producing harm such that its enforcement would be contrary to the public interest, but they will sparingly use their power to invalidate all or part of an agreement on the basis of public policy. Scentura Creations, 325 Ill. App. 3d at 69. The determination of whether an

agreement is contrary to public policy depends on the facts and circumstances of the case. Scentura Creations, 325 Ill. App. 3d at 69.

Turning to the statutes involved in this case, the Act and the Mechanics Lien Act, we review de novo the interpretation of a statute, a question of law. Abruzzo v. City of Park Ridge, 231 Ill. 2d 324, 332 (2008). The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. Abruzzo, 231 Ill. 2d at 332. The best indication of the legislature's intent is the statutory language, given its plain and ordinary meaning. Abruzzo, 231 Ill. 2d at 332. When the statutory language is clear and unambiguous, it must be applied without resort to other aids of construction. Abruzzo, 231 Ill. 2d at 332. When the plain language of two statutes conflicts, we will attempt to construe them together, in pari materia, if such an interpretation is reasonable. Abruzzo, 231 Ill. 2d at 332. "Legislative intent remains the foremost consideration, however." Abruzzo, 231 Ill. 2d at 332. In determining that intent, we may consider the statutes in their entirety, their purposes, the problems that they target, and the goals they seek to achieve. Abruzzo, 231 Ill. 2d at 332. Words and phrases should be interpreted not in isolation but in the light of other relevant provisions of the statutes. Abruzzo, 231 Ill. 2d at 333. However, when there is a general statutory provision and a specific statutory provision, the specific provision controls and should be applied. Sage Information Services v. King, 391 Ill. App. 3d 1023, 1029 (2009).

The Mechanics Lien Act states that a contractor is entitled to a lien when he enters a contract, "express or implied, or partly expressed or implied," with a landowner to make improvements to the land. 770 ILCS 60/1 (West 2008). However, even under such broad language, the validity of the contract may be attacked. In Excellent Builders, Inc. v. Pioneer Trust & Savings Bank, 15 Ill. App. 3d 832, 835-36 (1973), the defendant argued that the contract to build an office building in Chicago

was illegal because the construction of the building violated city zoning ordinances. The plaintiff argued that even if the contract was illegal, the doctrine of the balancing of the degrees of culpability applied. That doctrine provided that as a general rule, when two or more persons were engaged in an unlawful agreement, the law would not aid either and would leave the parties where their conduct had placed them. Excellent Builders, 15 Ill. App. 3d at 836-37. However, an exception to that doctrine applied where there existed a vast difference in the parties' degrees of turpitude. Excellent Builders, 15 Ill. App. 3d at 837.

The court adopted this doctrine of the balancing of the degrees of culpability as to recovery by mechanic's lien and determined that in its case the defendant acted with actual knowledge of the contract's violation of the city ordinances whereas the plaintiff had no actual knowledge of the contract's violation. Excellent Builders, 15 Ill. App. 3d at 837-38. Accordingly, the court determined that upholding the validity of the contract would not be injurious to the public order and, in fact, would "merely prevent the more culpable party from benefitting from his own wrongdoing, thereby contributing to the public order." Excellent Builders, 15 Ill. App. 3d at 838. Thus, even though the agreement was illegal, the court decided that it could still uphold it on equitable considerations for the purposes of the mechanic's lien.

In reading the Mechanics Lien Act, we know that a contractor who is entitled to a lien is defined as any person "who shall by any contract or contracts, express or implied, or partly expressed or implied," make improvements upon land. 770 ILCS 60/1(a) (West 2008). Section 39 of the Mechanics Lien Act states that the act shall be liberally construed as a remedial act. 770 ILCS 60/39 (West 2008). The Mechanics Lien Act does not reference the Act or otherwise distinguish between a contractor and those contractors that are in the business of home repair or remodeling. Therefore,

the Act is more specific in applying to those contractors that are in the business of home repair or remodeling and explicitly requires a written contract for specific types of services that exceed $1,000. 815 ILCS 513/10, 15, 30 (West 2008).

Turning to the facts of this case, we have a statute that declares that the business of home repair or remodeling affects the public interest and that improved and accurate communications between contractors and consumers will have a positive effect on the public interest. 815 ILCS 513/5 (West 2008). We also have a statute that declares that it is an unlawful act for a contractor to work without first obtaining a signed contract or work order for work over $1,000. 815 ILCS 513/30 (West 2008). Additionally, previous judicial decisions (Slepian, McGinnis, Bogard, Bilstrom, and Adkins) have either specifically held or otherwise acknowledged that it is unlawful for a contractor to perform such work without a written contract. Further, unlike in Excellent Builders where the plaintiff was the less culpable party, it is the contractor here who controlled whether he performed work for the consumer; the contractor who should have known the laws that apply to him; and the contractor who was required to prepare and obtain a signed contract under the Act. However, we also have a contractor who did not seek out the consumer or fail to perform under the contract. Additionally, we have a consumer who admitted to the existence of an oral contract, admitted that work was performed per the agreement, and admitted to having paid nearly all of the contract amount. While the statute requires a written contract, we cannot say that the oral contract in this case violated the public policy behind the Act, as we do not have a consumer who was deceived by a "fly by night" contractor. Rather, the case involves an honest contractor seeking payment for performed services, which the consumer contends were devalued by alleged damage incurred during the work.

Having concluded that the oral contract in this case does not violate the public policy of this state, we next consider whether equitable relief through quantum meruit or unjust enrichment is available to a contractor relying upon an oral contract despite the Act's requirement that a written contract exist for certain home repair or remodeling work. On this issue, we agree with McGinnis that the Act lacks any clear and plain intent to eliminate equitable remedies available under common law. McGinnis, 394 Ill. App. 3d at 257-58. Further, like in McGinnis, there is nothing pleaded stating that plaintiff was involved in any deceptive practices. McGinnis, 394 Ill. App. 3d at 259. The McGinnis court discounted Bogard's position that allowing quantum meruit recovery on an oral contract would reward deceptive practices and would violate public policy. McGinnis, 394 Ill. App. 3d at 260. While the Act's purpose was to eliminate deceptive practices by making a written contract required for certain types of home repair or remodeling, an oral contract by itself is not a deceptive practice. McGinnis, 394 Ill. App. 3d at 260. Where unfair and dishonest conduct that the Act intended to eliminate is not present, the failure to work under a written contract is a "technical deficiency," which does not bar recovery by the contractor under equitable theories. McGinnis, 394 Ill. App. 3d at 260.

We further agree with McGinnis that allowing recovery under equitable theories would not defeat the purpose of the Act. The purpose of the Act is to protect consumers from "fly by night" deceptive contractors, not to bar an honest contractor from recovering for services actually performed. McGinnis, 394 Ill. App. 3d at 260. To hold otherwise would allow a consumer to renege on an otherwise valid oral contract after work is performed and enjoy the benefits of his improved property at the expense of the contractor. McGinnis, 394 Ill. App. 3d at 260-61.

The McGinnis court considered the term "unlawful" in its determination that nothing in the Act suggested the legislature's intent to repeal all forms of equitable remedies. The court concluded that "unlawful," a broad and general term, did not "convey a clear expression by the legislature that it intended to repeal more than a century of common law." McGinnis, 394 Ill. App. 3d at 261. At best, the court stated, "unlawful" was ambiguous and doubtful in conveying an intent to abrogate the common-law equitable remedies. McGinnis, 394 Ill. App. 3d at 262. Moreover, the equitable remedies are not based on a contract, and recovery is limited to no more than what the contractor deserves for services rendered. McGinnis, 394 Ill. App. 3d at 262. We agree with McGinnis and hold that declaring an oral contract "unlawful" does not affect a contractor's ability to recover for work already performed under equitable remedies.

Following the briefing in this case, the legislature passed Senate Bill 2540, which amends section 30 of the Act, as follows:

"Action for actual damages. Any person who suffers actual damage as a result of a violation of this Act may bring an action pursuant to Section 10a of the Consumer Fraud and Deceptive Business Practices Act." 96th Ill. Gen. Assem., Senate Bill 2540, 2009 Sess.

The bill was first read in the Senate on January 12, 2010, and eventually passed and took effect July 12, 2010. The amendment completely removes the "unlawful" language and provides a private right of action under the Consumer Fraud Act. When the legislature amends a statute by deleting certain language, it is presumed to have intended to change the law in that respect. KSAC Corp. v. Recycle Free, Inc., 364 Ill. App. 3d 593, 597 (2006). The legislature is presumed to have been aware of judicial decisions interpreting the statute and to have acted with such knowledge when amending the statute. Morris v. William L. Dawson Nursing Center, Inc., 187 Ill. 2d 494, 499

(1999).  Thus, we presume that the legislature knew of the <u>McGinnis</u>, <u>Bogard</u>, <u>Bilstrom</u>, <u>Slepian</u>, and <u>Abrams</u> decisions when it introduced the amended bill.

Generally, deleting language in a statute results in the presumption that the intention was to change the law, but that presumption may be overcome where the nature of the amendment suggests that the drafters intended to interpret or clarify the original statute.  <u>Friedman v. Krupp Corp.</u>, 282 Ill. App. 3d 436, 444 (1996).  Here, two cases had interpreted the effect of "unlawful" in opposite ways--<u>McGinnis</u> (equitable remedies not barred) and <u>Bogard</u> (equitable remedies barred).  The presumption that the deletion of the "unlawful" language was an intent to change the law does not logically apply, because it is unclear which interpretation of the law was to be changed--<u>McGinnis</u>'s interpretation or <u>Bogard</u>'s.  It seems more likely that the legislature's change in the language of section 30 was to clarify the original statute such that there is no question that equitable remedies remain available and that a consumer's private right of action is directly included in the Consumer Fraud Act.  Therefore, we find that the subsequent amendment to section 30 supports our conclusion in this case that the legislature did not intend to make oral contracts for home repair or remodeling unlawful such that a contractor is barred from recovering under common-law equitable theories.  Rather, the Act intended that consumers may recover under the Consumer Fraud Act when they are injured by oral contracts in violation of the Act.

In conclusion, we find that the oral contract between plaintiff and defendants did not violate the public policy of this state as codified in the Act, and accordingly, equitable relief remains an available remedy to plaintiff, a contractor seeking to enforce the contract.  Therefore, we reverse the judgment of the circuit court of Winnebago County and remand the cause for further proceedings.

Reversed and remanded.

ZENOFF, P.J., and SCHOSTOK, J., concur.